1  **DAVID B. JONELIS (SBN 265235)**
   djonelis@lavelysinger.com
2  **KELSEY J. LEEKER (SBN 313437)**
   kleeker@lavelysinger.com
3  **LAVELY & SINGER, P.C.**
   2049 Century Park East, Suite 2400
4  Los Angeles, California 90067-2906
   Tel:   (310) 556-3501
5  Fax:   (310) 556-3615

6  Attorneys for Plaintiff
7  ALAN LAZAR

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| ALAN LAZAR, an individual, | CASE NO.: 2:24-cv-09748-SVW-KS |
|---|---|
| Plaintiff, | [Hon. Stephen V. Wilson] |
| v. | |
| AMAZON STUDIOS LLC, a corporation; EFT MEDIA PRODUCTIONS LLC d/b/a EVOLUTION MEDIA, a limited liability company; and DOES 1-10, | **PLAINTIFF ALAN LAZAR'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW (L.R. 16-4)** |
| Defendants. | Pretrial Conference<br>Date: October 6, 2025<br>Time: 3:00 p.m. |

7540-2

# PLAINTIFF ALAN LAZAR'S WITNESS LIST

Pursuant to Local Rule 16-4, Plaintiff Alan Lazar ("Plaintiff") hereby respectfully submits this Memorandum of Contentions of Fact and Law in anticipation of the October 6, 2024 Final Pretrial Conference and the October 14, 2025 trial date.

## I. PLAINTIFF'S CLAIMS, ELEMENTS, AND KEY EVIDENCE [L.R. 16-4.1(a), (b), (c)]

Plaintiff's operative First Amended Complaint (the "Complaint") alleges three counts for relief.

**Claim 1: Copyright Infringement.**

Summary: Defendant EFT MEDIA PRODUCTIONS LLC d/b/a EVOLUTION MEDIA ("Defendant") repeatedly and willfully infringed Plaintiff's copyrights to the title theme song (the "Title Theme") of the reality television show The Real Housewives of Beverly Hills ("RHOBH") by reproducing, distributing, and/or otherwise exploiting the copyrights in connection with RHOBH without authorization. As a result, Plaintiff is entitled to maximum statutory damages.

Elements: Plaintiff has the burden of proving:

(1) Plaintiff is the owner of a valid copyright; and
(2) Defendants copied original expression from the copyrighted work.

*See* Ninth Circuit Manual of Model Jury Instructions: Civil § 17.5 (2017).

Evidence:

***ELEMENT 1:***

- Plaintiff is undisputedly the person who fixed the Title Theme in a tangible medium of expression – both as to the recording and the publishing. There is no written transfer of Plaintiff's rights to the Title Theme to Defendant or any other person or entity.

- It is also undisputed that Plaintiff is the sole and exclusive owner of the copyrights in and to the sound recording of the Title Theme (registration number SR 980-169) and to the underlying composition (registration number PA 2-486-300).

***ELEMENT 2:***

- Defendant has been continuously producing and exploiting the RHOBH television show since 2010, with the Title Theme continuously embodied therein, without any written agreement with Plaintiff transferring any of Plaintiff's rights in the Title Theme to Defendant.

- Further, to the extent Defendant argues that there was a non-exclusive implied license for Defendant to use the Title Theme in RHOBH, Defendant's admitted sale of all rights to the Title Theme (including the copyrights and on a purportedly exclusive basis) to Bravo would be outside the scope of any purported implied license.

- Further, to the extent Defendant argues that there was an implied license for Defendant to use the Title Theme in RHOBH, the total amount of $3,500 paid to Plaintiff for such an implied license is so low that it would make any purported implied license unconscionable.

**Claim 2: Breach of Implied Covenant of Good Faith and Fair Dealing**

Summary: Defendant breached the implied covenant of good faith and fair dealing that is inherent in the subject agreement with Plaintiff.

Elements: Plaintiff has the burden of proving:

(1)   Existence of the contract;

(2)   Plaintiff's performance or excuse for nonperformance;

(3)   Defendant acted in a way that prevented Plaintiff from receiving the benefits of the contract;

(4)   Defendant's actions were not done fairly or in good faith; and

(5)   Plaintiff's harm caused by Defendant's actions.

Evidence:

**ELEMENT 1:**

- It is undisputed that Plaintiff entered into an agreement with Defendant on June 16, 2010 wherein Plaintiff agreed to compose background "music cues" for Defendant for use in the RHOBH, season 1, and that Defendant in exchange would pay Plaintiff $225 per cue in addition to "mechanical royalties" (the "2010 Music Cues Agreement").

- It is also undisputed that the 2010 Music Cues Agreement was amended on April 28, 2011, April 10, 2012, April 29, 2013, July 16, 2014, July 6, 2015, July 20, 2016, July 12, 2017, August 21, 2018, and January 27, 2020 for each new season (or "cycle" of RHOBH), but that these amendments only changed the price per que and reinforced that the original 2010 Music Cues Agreement remained "in full force and legal effect."

**ELEMENT 2:**

- It is undisputed that Plaintiff performed his obligations under the Music Cues Agreement, including by composing all music cues that were requested by Defendant.

**ELEMENTS 3 & 4:**

- Plaintiff will present evidence at trial that his right to receive mechanical royalties was a material benefit of the 2010 Music Cues Agreement, and that he communicated the importance of that benefit to Defendant.

- Defendant has never paid Plaintiff any mechanical royalties, despite the fact that there is evidence (provided by international collection societies to Plaintiff's expert) that mechanical royalties for the music cues have accrued.

- The reason Defendant has failed to pay Plaintiff any mechanical royalties is because Defendant sold Plaintiff's right to receive such royalties before Plaintiff even entered into the 2010 Music Cues Agreement. Specifically, after Plaintiff initiated this action, Defendant disclosed for the first time its

August 3, 2009 Production Services Agreement with Bravo Media Productions LLC (the "PSA"), wherein Defendant had agreed to produce RHOBH for distribution on Bravo's television network. Critically, under the PSA, in exchange for receiving substantial amounts of upfront and backend consideration from Bravo, Evolution purported to exclusively transfer all copyrights owned by Defendant in and to the RHOBH shows to Bravo – including all music rights.

- Under the PSA, Bravo was only required to pay royalties in connection with RHOBH if such royalties were pre-approved in writing by Bravo, and Defendant was required to provide Bravo with any documents necessary for the collection or payment of such royalties. However, despite promising under the 2010 Music Cues Agreement that Plaintiff would receive a portion of mechanical royalties from RHOBH, Defendant did not obtain Bravo's written approval of the 2010 Music Cues Agreement prior to its execution, nor did Defendant provide Bravo with the documents and information necessary for Bravo to collect and pay mechanical royalties in connection with Plaintiff's music cues.

- As the testimony will prove (and as admitted during deposition testimony), prior to Plaintiff's execution of the 2010 Music Cues Agreement, Defendant never disclosed to Plaintiff that it did not have the right to receive mechanical royalties for the Music Cues.

- Because Defendant's actions were contrary to the mechanical royalties provision of the 2010 Music Cues Agreements' purpose and contrary to Plaintiff's legitimate expectations, Defendant violated the implied covenant of good faith and fair dealing that is intrinsic to all contracts, as alleged in Paragraphs 37 and 41 of the Complaint. For these reasons, Defendant's actions were not done fairly or in good faith.

*ELEMENT 5:*

- The testimony will show that Plaintiff's reasonable expectation when he entered into the 2010 Music Cues Agreement was that he would receive substantial mechanical royalties. On account of Defendant's failure to take the necessary actions in order for Plaintiff to receive mechanical royalties pursuant to the 2010 Music Cues Agreement, Plaintiff has been deprived of this expected benefit of the bargain.

- Plaintiff will seek recovery of any and all mechanical royalties due to Plaintiff from Defendant's exploitation of the music cues created pursuant to the 2010 Music Cues Agreement. The total amount of damages will be calculated by applying the formula set forth by Plaintiff's expert in his expert report to the amount of international public performance royalties actually received by Plaintiff.

**Claim 3: Accounting.**

Summary: An accounting of moneys owed to Plaintiff for (1) Defendant's exploitation of the Title Theme and (2) the monies Plaintiff is owed pursuant to the 2010 Music Cues Agreement for mechanical royalties.

Elements: Plaintiff has the burden of proving:

(1) a relationship exists between the plaintiff and defendant that requires an accounting; and

(2) some balance is due the plaintiff that can only be ascertained by an accounting. *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 910 (2013).

Evidence:

*ELEMENT 1:*

- Pursuant to his uncontested copyright registrations, Plaintiff owns the copyrights to the Title Theme, which Defendant has been exploiting continuously since 2010.

- It is undisputed that Plaintiff and Defendant entered into the 2010 Music Cues Agreement, which provides that Plaintiff is entitled to receive mechanical royalties for his "music cues."

*ELEMENT 2:*

- Defendant has admitted that it has earned "give or take" $15 million in total for its exploitation of RHOBH, not including the years 2022-2025, for which Defendant has yet been unable to account. Defendant has argued that it does not have any documents that would establish what monies Defendant earned for its exploitation of the music of RHOBH. Therefore, Plaintiff is entitled to a complete accounting of the total monies that Defendant has earned for the exploitation of RHOBH and then it is Defendant's burden to establish which of those amounts are *not* attributable to the music rights (either the Title Theme or the music cues).

## II. DEFENDANT'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S CLAIMS AND PLAINTIFF'S KEY OPPOSITION EVIDENCE [L.R. 16-4.1(d)(e)(f)]

Defendant has not asserted any counterclaims herein.

**First Affirmative Defense: Failure To State a Claim.**

This is not a valid affirmative defense, and thus no response is required. *See Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1174 (N.D. Cal. 2010) (striking affirmative defense on the basis that "[f]ailure to state a claim is not a proper affirmative defense but, rather, asserts a defect in [the plaintiff]'s prima facie case."); *Zivkovic v. S. California Edison Co.,* 302 F.3d 1080, 1088 (9th Cir.2002) ("A defense which demonstrates that plaintiff has not met its burden of proof as to an element plaintiff is required to prove is not an affirmative defense.").

**Second Affirmative Defense: Lack of Standing**

This is not a valid affirmative defense, and thus no response is required. *Kanaan v. Yaqub*, 709 F. Supp. 3d 864, 869 (N.D. Cal. 2023) ("lack of standing, like failure to state a claim, is not a true affirmative defense.").

**Third Affirmative Defense: Invalidity.**

This is not a proper affirmative defense, and thus no response is required. *See Philips N. Am. LLC v. KPI Healthcare, Inc.*, 2020 WL 2475094, at *5 (C.D. Cal. Apr. 15, 2020) (striking defenses challenging copyright validity because they "are negative defenses attacking [plaintiff's] prima facie case and therefore are not proper affirmative defenses"); *Scott Griffith Collaborative Sols., LLC v. Falck N. California Corp.*, 2021 WL 4846935, at *4 (N.D. Cal. June 7, 2021) (striking invalidity affirmative defense); *Sadowski v. Internet Brands, Inc.*, No. 218CV00704ODWFFM, 2018 WL 3219374, at *4 (C.D. Cal. June 28, 2018) (striking defenses without leave to amend because "[o]wnership of a valid copyright is part of a copyright plaintiff's case in-chief" and affirmative defenses that allege defects in a plaintiff's prima facie case are "improper").

**Fourth Affirmative Defense: License.**

Summary: Defendant asserts that it had an express license to use the Title Theme and therefore did not infringe upon Plaintiff's copyrights.

Elements:

(1) Defendant has the burden of proving that it received an express license to use Plaintiff's copyrighted work.

(2) If the defendant proves this, the burden shifts to Plaintiff to show that the defendant's use of Plaintiff's copyrighted work exceeded the scope of the license. *See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.25a (2023).

Opposition Evidence:

<u>Element 1.</u> There is no written license agreement between Defendant and Plaintiff transferring any of Plaintiff's rights in the Title Theme to Defendant.

<u>Element 2</u>. Assuming an express license, Defendant's admitted sale of all rights to the Title Theme (including the copyrights) to Bravo would be outside the scope of any purported license. *See generally*, Bravo Production Services Agreement.

**Fifth Affirmative Defense: Implied License.**

<u>Summary:</u> Defendant asserts that it had an implied license to use the Title Theme and therefore did not infringe upon Plaintiff's copyrights.

<u>Elements:</u>

(1) Defendant has the burden of proving that a license for it to use the Title Theme can be implied from the parties' conduct.

(2) If Defendant proves this, the burden shifts to Plaintiff to show that Defendant's use exceeded the scope of the license or that the license is unconscionable. *See Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 825 (9th Cir. 2001); *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 291 (2001).

<u>Opposition Evidence:</u>

<u>Element 1.</u> It is undisputed that Plaintiff allowed Defendant to use the Title Theme in RHOBH on a non-exclusive basis.

<u>Element 2</u>. Assuming an implied license to use the Title Theme, Defendant's admitted sale of all rights to the Title Theme (including the copyrights) to Bravo would be outside the scope of any such license. *See generally* Bravo Production Services Agreement. Moreover, the total amount of $3,500 paid to Plaintiff for such an implied license is so low that it would make the license unconscionable. This will be apparent once Defendant provides the information concerning its total revenues from RHOBH (which information is currently being sought in a discovery dispute pending before Magistrate Judge Stevenson).

**Sixth Affirmative Defense: Statute of Limitations.**

<u>Summary:</u> Defendant asserts that Plaintiff's claims are barred by the applicable statutes of limitations.

<u>Elements:</u>

Under the discovery rule, Plaintiff was required to bring his copyright cause of action within three years of when he could have reasonably discovered the facts constituting that claim, and was required to bring his breach of contract claim within four years of when he could have reasonably discovered the facts constituting that claim. *Warner Chappell Music, Inc. v. Nealy*, 601 U.S. 366 (2024); *Gabriel Technologies Corp. v. Qualcomm Inc.*, 857 F.Supp.2d 997 (S.D. Cal.2012).

<u>Opposition Evidence:</u>

As evidenced by the deposition testimony of Paul Trombetta and the emails exchanged between Mr. Trombetta and Plaintiff, Plaintiff did not discover the lack of a written agreement concerning the Title Theme until, at the earliest, late 2022 (well within the three-year statute of limitations).

As evidenced by the fact that Plaintiff did not even receive a copy of the unredacted Bravo Production Services Agreement until after filing this lawsuit, he could not have discovered that Defendant had sold all music rights to Bravo until then (well within the four-year statute of limitations).

**Seventh Affirmative Defense: Waiver/Acquiescence.**

<u>Summary</u>: Defendant asserts that Plaintiff's claims against Defendants are barred, in whole or in part, by the equitable doctrines of waiver and/or acquiescence.

<u>Elements:</u> Defendant must prove by clear and convincing evidence:

(1) Intentional relinquishment of a known right;

(2) with knowledge of its existence; and

(3) the intent to relinquish it. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001).

Opposition Evidence:

Elements 1, 2 & 3: The evidence will establish that Plaintiff knew of his right to receive mechanical royalties pursuant to the 2010 Music Cues Agreement but never relinquished that right, intentionally or otherwise. Indeed, Defendant gave away its ability to receive mechanical royalties in secret without informing Plaintiff that this would impact his rights under the agreement. Further, the evidence will show that Plaintiff intended to give Defendant a non-exclusive license to use the Title Theme for RHOBH, but never intended to relinquish his copyright ownership thereto.

**Eighth Affirmative Defense: Estoppel.**

Summary: Defendant asserts that Plaintiff's claims are barred by the doctrine of estoppel.

Elements: Defendant must prove

(1) Plaintiff had knowledge of the facts;

(2) Plaintiff's intent that his conduct be acted upon or act in a manner that gives Defendant the right to believe such conduct was intended to be relied upon;

(3) Ignorance of the true facts by Defendant; and

(4) Detrimental reliance. *See LL B Sheet 1, LLC v. Loskutoff*, 362 F. Supp. 3d 804, 822 (N.D. Cal. 2019).

Opposition Evidence:

Element 1. It is undisputed that Plaintiff did not have knowledge of the terms of Defendant's PSA with Bravo, in which Defendant sold its (1) right to receive mechanical royalties and (2) copyright interests in the RHOBH music to Bravo.

Element 2. Plaintiff did not act in any way that would cause Defendant to deny Plaintiff his right to receive mechanical royalties or cause Defendant to sell Plaintiff's copyright interests in the Title Theme.

Element 3. Defendant knew of the existence of the PSA and its terms therein. Defendant knew that there was no written agreement governing a transfer of Plaintiff's copyrights to the Title Theme to Defendant. Defendant knew at the time it

entered into the 2010 Music Cues Agreement that it had no rights to collect mechanical royalties because it had already sold those rights to Bravo.

<u>Element 4</u>. Defendant did not rely on any conduct by Plaintiff that would force or justify Defendant to infringe on Plaintiff's copyrights or breach its covenant of good faith and fair dealing.

**Ninth Affirmative Defense: Unclean Hands.**

<u>Summary</u>: Defendant asserts that Plaintiff's claims are barred by the doctrine of unclean hands.

<u>Elements</u>:

(1) Inequitable conduct by the Plaintiff;

(2) that the Plaintiff's conduct directly relates to the claim which it has asserted against the Defendant; and

(3) Plaintiff's conduct injured the defendant. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F.Supp.2d 1197, 1223 (C.D. Cal. 2007).

<u>Opposition Evidence</u>:

<u>Elements 1, 2, & 3</u>: Defendant has thus far provided no facts whatsoever that would indicate how this affirmative defense applies here. It is undisputed that Plaintiff fully performed under the 2010 Music Cues Agreement. Thus, there was no inequitable conduct by Plaintiff that would give rise to an unclean hands defense. The only harm to Defendant's arose from Defendant's own inabilities and refusal to comply with their contractual obligations.

**Tenth Affirmative Defense: Laches.**

<u>Summary</u>: Defendant asserts that Plaintiff's claims are barred by laches.

<u>Elements</u>:

(1) Plaintiff's unreasonable delay in asserting its claims;

(2) Resulting prejudice to Defendant. *Couveau v. American Airlines*, 218 F.3d 1078, 1083 (9th Cir. 2001)

Opposition Evidence:

Elements 1 & 2: The evidence proves that Plaintiff promptly filed suit immediately after discovering that Defendant had failed to pay him any mechanical royalties and after demanding an accounting therefore. Plaintiff also immediately asserted his copyright claims as soon as he was informed by representatives of Defendant that there was no agreement governing a transfer of rights from Plaintiff to Defendant. Accordingly, there was no unreasonable delay or prejudice to Defendants.

**Eleventh Affirmative Defense: Failure to Mitigate.**

Defendant is no longer pursuing this affirmative defense.

**Twelfth Affirmative Defense: Release.**

Defendant is no longer pursuing this affirmative defense.

**Thirteenth Affirmative Defense: Ratification.**

Summary: Defendant asserts that Plaintiff's claims are barred by the doctrine of ratification.

Elements: Defendant must prove:

(1) Plaintiff's voluntary retention of benefits; and

(2) Knowledge of the unauthorized nature of the act. *Common Wealth Ins. Sys., Inc. v. Kersten*, 40 Cal. App. 3d 1014, 1026 (Ct. App. 1974).

Opposition Evidence:

Elements 1 & 2: The evidence will establish that Plaintiff has not retained any benefits from Defendants wrongful actions as alleged in the Complaint; rather, Plaintiff has suffered harm. Plaintiff did not have knowledge of the existence or the terms of the PSA, in which Defendant purported to sell the right to collect mechanical royalties and purported to sell copyright interests to the Title Theme (which it did not possess).

### III. ANTICIPATED EVIDENTIARY ISSUES [L.R. 16-4.1(h)]

At the time of the filing of this Memorandum, there is a pending discovery dispute between the parties before Magistrate Judge Stevenson, which is being

briefed pursuant to Court order (ECF No. 33).  To the extent that issue is not resolved before trial, the dispute is briefly summarized as follows:

      Plaintiff served Defendant with a deposition notice for the taking of Defendant's corporate designee (F.R.C.P. 30(b)(6)) on August 1, 2025, which included five topics on which Defendant's corporate designee would be questioned. Topic #3 was stated as follows: "EFT's agreement with Bravo Media Productions LLC dated August 3, 2009, including but not limited to what monies were received pursuant to its terms." At the beginning of his deposition, Defendant's Rule 30(b)(6) witness stated that he was prepared and qualified to testify as to all five noticed topics. Despite this, he was not prepared to testify as to Topic 3 – *i.e*., what monies were received pursuant to the terms of the PSA.

      Defendant's Rule 30(b)(6) witness was unable to answer questions regarding what monies were received by Defendant pursuant to the PSA, nor could he provide a name of a person who would be able to testify as to the information requested. Further, this witnesses testified that he had not reviewed a single document or spoken to a single person to prepare for this Topic 3.

      Plaintiff seeks an order from Magistrate Judge Stevenson directing Evolution to produce a  Rule 30(b)(6) witness that is sufficiently prepared to answer questions on this topic. The information sought by Topic 3 is critical for meeting Plaintiff's burden of showing the "infringer's gross revenue" under Section 504(b) of the Copyright Act.  Indeed, without that information, the jury will have no basis for calculating copyright damages. Topic 3 is also important for the purpose of opposing Defendant's "implied license" argument.  Specifically, Plaintiff contends that any "implied license" would be invalid under California law due to a "gross disparity in the values exchanged."

## IV.    ISSUES OF LAW [L.R. 16-4.1(i)]

      Plaintiff does not currently anticipate any issues of law.

## V. BIFURCATION OF ISSUES [L.R. 16-4.3]

Plaintiff makes no request that the issues in this action be bifurcated.

## VI. JURY TRIAL [L.R. 16-4.4]

Plaintiff has a right to a jury trial for the following claims:

(1) Copyright Infringement. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998).

(2) Breach of Contract. *Raedeke v. Gibraltar Sav. & Loan Assn.*, 10 Cal. 3d 665 (1974); *Monster, LLC v. Sup. Court*, 12 Cal. App. 5th 1214 (2017).

## VII. ATTORNEYS' FEES [L.R. 16-4.5]

Attorneys' fees are sought by Plaintiff and recoverable for the following claim:

(1) Copyright Infringement: The Copyright Act provides that in any copyright action, the court "may allow the recovery of full costs by or against any party…[and] the court may award a reasonable attorney's fee to the prevailing party as part of the costs. 17 U.S.C. 505.

## VIII. ABANDONMENT OF ISSUES [L.R. 16-4.6]

To the extent Plaintiff has previously raised contentions that are not addressed above, Plaintiff does not intend to pursue those contentions at trial.

Dated: September 15, 2025

LAVELY & SINGER
PROFESSIONAL CORPORATION
DAVID B. JONELIS
KELSEY J. LEEKER

By: */s/ David B. Jonelis*
DAVID B. JONELIS

Attorneys for Plaintiff
ALAN LAZAR