JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA  90067-2901
Telephone:   +1 213 239 6900
Facsimile:    +1 213-239-5199

JENNER & BLOCK LLP
Eric W. Wolff (SBN 341180)
Eric.Wolff@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   +1 213 239 5100
Facsimile:   +1 213 239 5199

Attorneys for Defendant
EFT Media Productions LLC d/b/a
Evolution Media

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ALAN LAZAR, an individual,<br><br>                              Plaintiff,<br><br>          v.<br><br>AMAZON STUDIOS LLC, et al.,<br><br>                              Defendants. | Case No. 2:24-cv-09748-SVW-KS<br><br>**DEFENDANT EFT MEDIA PRODUCTIONS LLC'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Judge:  The Honorable Stephen V. Wilson<br>Ctrm:   10A, 10th Floor<br><br>Final Pretrial Conference: Oct. 6, 2025<br>Trial Date: Oct. 14, 2025<br>Action Filed:  Nov. 12, 2024 |

1

# **TABLE OF CONTENTS**

I.    Introduction ............................................................................... 1

II.    Summary Statement of Plaintiff's Claims ..................................... 3

III.    Elements Required to Establish Plaintiff's Claims and Evidence in Opposition ........................................................................... 3

    A.    Elements Required to Establish Plaintiff's Claim for Copyright Infringement ................................................... 3

    B.    Evidence Opposing Plaintiff's Claim for Copyright Infringement ................................................................ 3

        1.    Mr. Lazar Does Not Own the Copyright in the Theme Because It Is a Work Made for Hire for Evolution ........ 3

        2.    Mr. Lazar Expressly Assigned All Rights in His RHOBH Compositions and Masters, Including the Theme, to Evolution ....................................................... 5

        3.    At a Minimum, Evolution Has an Irrevocable Implied License to Use the Title Theme, Which Defeats Mr. Lazar's Copyright Infringement Claim ....................... 6

        4.    Mr. Lazar's Claim for Copyright Infringement Is Barred by the Three-Year Statute of Limitations That Applies to Disputes Based on Copyright Ownership. ...... 7

    C.    Elements Required to Establish Plaintiff's Claim for Breach of Contract ....................................................... 9

    D.    Evidence Opposing Plaintiff's Claim for Breach of Contract ............. 9

    E.    Elements Required to Establish Plaintiff's Claim for Accounting ................................................................. 11

    F.    Evidence Opposing Plaintiff's Claim for Accounting ..................... 11

IV.    Defendant's Affirmative Defenses ............................................ 11

    A.    Summary Statement of Defendant's Affirmative Defenses ............... 11

    B.    Elements Required to Establish Defendant's Affirmative Defenses and Supporting Evidence .................................. 12

        1.    Failure to State a Claim .............................................. 12

        2.    Lack of Standing ....................................................... 13

        3.    Invalidity ................................................................. 13

        4.    Express License ........................................................ 14

        5.    Implied License ........................................................ 14

6.    Statutes of Limitations ..................................................... 15

7.    Waiver .......................................................................... 16

8.    Estoppel ....................................................................... 17

9.    Unclean Hands .............................................................. 18

10.   Laches .......................................................................... 19

11.   Ratification ................................................................... 19

V.    Evidentiary Issues ......................................................................... 20

A.    Plaintiff's Expert, Johnathan Clifford, Cannot Provide Any
      Admissible Testimony. ......................................................... 20

B.    Plaintiff's Damages Evidence Is Entirely Speculative  and
      Should Be Excluded ............................................................. 20

C.    Damages Evidence Outside the Applicable Statute of
      Limitations Period Should Be Excluded ................................. 21

D.    Mr. Lazar's Subjective Beliefs and Aspirations Regarding
      His 2010 Composer Agreement with Evolution Are Not
      Admissible. ........................................................................... 21

E.    Witnesses Should Not Be Permitted to Speculate Regarding
      the Reasons Bravo Contacted Various Parties Regarding an
      Agreement for the RHOBH Theme. ....................................... 22

VI.   Bifurcation of Issues ..................................................................... 22

VII.  Jury Trial ..................................................................................... 23

VIII. Attorneys' Fees ............................................................................ 24

IX.   Abandonment of Issues ................................................................ 24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) .......................................................................... 17

*A.T. v. Everett School District*,
  300 F. Supp. 3d 1243 (W.D. Wash. 2018) .......................................................... 8

*Asset Marketing Systems, Inc. v. Gagnon*,
  542 F.3d 748 (9th Cir. 2008) ...................................................................... 6, 15

*Bassil v. Webster*,
  2021 WL 1235258 (C.D. Cal. Jan. 15, 2021) .................................................... 23

*City of Chino v. Jackson*,
  97 Cal. App. 4th 377, 382 (2002) ...................................................................... 5

*Conley v. Vacanti*,
  2025 WL 1042239 (S.D. Fla. Mar. 3, 2025) ...................................................... 8

*Conley v. Vacanti*,
  2025 WL 1789313 (S.D. Fla. June 30, 2025) .................................................... 8

*Danjaq LLC v. Sony Corp.*,
  263 F.3d 942 (9th Cir. 2001) .......................................................................... 19

*Duggal v. G.E. Capital Communications Services, Inc.*,
  81 Cal. App. 4th 81 (2000) ............................................................................ 11

*FTC v. Publishing Clearing House, Inc.*,
  104 F.3d 1168 (9th Cir. 1997) ........................................................................ 22

*Graham Technology Solutions, Inc. v. Thinking Pictures, Inc.*,
  949 F. Supp. 1427 (N.D. Cal. 1997) .................................................................. 6

*Hadady Corp. v. Dean Witter Reynolds, Inc.*,
  739 F. Supp. 1392 (C.D. Cal. 1990) ............................................................ 17, 18

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  896 F.2d 1542 (9th Cir. 1989) ........................................................................ 13

iv

*I.A.E., Inc. v. Shaver,*
  74 F.3d 768 (7th Cir. 1996) .................................................................................. 6

*Jinro America Inc. v. Secure Investments, Inc.,*
  266 F.3d 993 (9th Cir. 2001) .............................................................................. 23

*Kolton v. Universal Studios, Inc.,*
  2004 WL 3242338 (C.D. Cal. Dec. 14, 2004) ...................................................... 7

*Kwan v. Schlein,*
  634 F.3d 224 (2d Cir. 2011) .................................................................................. 7

*Lanard Toys Ltd. v. Novelty Inc.,*
  511 F. Supp. 2d 1020 (C.D. Cal. 2007) .............................................................. 13

*Lukovsky v. City & County of San Francisco,*
  535 F.3d 1044 (9th Cir. 2008) .............................................................................. 8

*Marder v. Lopez,*
  450 F.3d 445 (9th Cir. 2006) .............................................................................. 17

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.,*
  518 F. Supp. 2d 1197 (C.D. Cal. 2007) .............................................................. 18

*Mindlab Media, LLC v. LWRC International, LLC,*
  2013 WL 1141987 (C.D. Cal. Mar. 18, 2013) ...................................................... 6

*Naranjo v. Doctors Medical Center of Modesto, Inc.,*
  111 Cal. App. 5th 408 (2025) ............................................................................... 9

*Rich v. Shrader,*
  823 F.3d 1205 (9th Cir. 2016) ............................................................................ 16

*Sass v. Cohen,*
  10 Cal. 5th 861 (2020) ....................................................................................... 11

*Seven Arts Filmed Entertainment Ltd. v. Content Media Corp. PLC,*
  733 F.3d 1251 (9th Cir. 2013) ....................................................................... 7, 15

*Third Story Music, Inc. v. Waits,*
  41 Cal. App. 4th 798 (1995) ............................................................................... 23

*Vaillette v. Fireman's Fund Insurance Co.,*
  18 Cal. App. 4th 680 (1993) ............................................................................... 22

*Villiarimo v. Aloha Island Air, Inc.*,
 281 F.3d 1054 (9th Cir. 2002) ..................................................................... 10

*Warren v. Fox Family Worldwide, Inc.*,
 328 F.3d 1136 (9th Cir. 2003) .................................................................. 3, 4

*Zahedi v. Miramax, LLC*,
 2022 WL 4596551 (C.D. Cal. Aug. 19, 2022) ............................................ 7

*Zuill v. Shanahan*,
 80 F.3d 1366 (9th Cir. 1996) ..................................................................... 15

**Statutes**

17 U.S.C. § 101 .............................................................................................. 4

17 U.S.C. § 201-205 ...................................................................................... 13

17 U.S.C. § 201(b) ........................................................................................... 4

17 U.S.C. § 201(d)(1) ...................................................................................... 5

17 U.S.C. § 412 ................................................................................................ 8

17 U.S.C. § 501 .............................................................................................. 13

17 U.S.C. § 507 .......................................................................... 7, 12, 15, 16, 21

17 U.S. Code § 505 ........................................................................................ 24

California Civil Code § 1588 ........................................................................ 19

California Civil Code § 1589 ........................................................................ 19

California Civil Code § 1638 ........................................................................ 22

California Civil Procedure Code § 337 ....................................... 12, 16, 21

**Court Rules**

Federal Rule of Civil Procedure 8(a) ........................................................... 12

Federal Rule of Civil Procedure 42(b) ........................................................ 23

Federal Rule of Evidence 602 ...................................................................... 22

Federal Rule of Evidence 802 ...................................................................... 22

Local Rule 16-4 ................................................................................................ 1

**Other Authorities**

1 California Forms of Jury Instruction 338 (Matthew Bender, 2025) .................... 16

Judicial Council of California Civil Jury Instructions No. 303 (2025).................... 9

Modern Federal Jury Instructions-Civil § 9.28
    (Matthew Bender, 2025)...................................................................................... 18

3 NIMMER ON COPYRIGHT § 10.02[A][5] (2025) ...................................................... 6

Ninth Circuit Manual of Model Civil Jury Instructions § 17.5 ................................ 3

Ninth Circuit Manual of Model Civil Jury Instructions § 17.25 ...................... 14, 15

Pursuant to Local Rule 16-4, Defendant EFT Media Productions LLC d/b/a Evolution Media ("Evolution") submits this Memorandum of Contentions of Fact and Law.

## I.    INTRODUCTION

For twelve years, Plaintiff Alan Lazar was paid handsomely to write music for the long-running reality television show *The Real Housewives of Beverly Hills* ("RHOBH").  When he began working on the show, he signed a work-made-for-hire agreement with the show's producer, Defendant EFT Media Productions LLC d/b/a Evolution Media ("Evolution").   Under the work-made-for-hire agreement, Mr. Lazar received a specified fee per composition plus performance royalties generated by compositions used on the show.  Over the course of 14 seasons, Mr. Lazar has earned more than $1.6 million in performance royalties and counting.  But in 2022, Mr. Lazar decided he was entitled to even more.  He now seeks to rewrite his contract more than 15 years later to recover an entirely new category of compensation, foreign mechanical royalties, which he was never entitled to receive under the contract.  Mr. Lazar also claims ownership over the main title theme of RHOBH (the "Theme"), which he composed in 2010.  To this end, Mr. Lazar filed this lawsuit against Evolution for copyright infringement, breach of contract, and an accounting.

Mr. Lazar's copyright infringement claim fails as a matter of law for two independent reasons.  *First*, his contract clearly states that all the music he wrote for RHOBH, including "all additional music required by [Evolution]," would be a "work made for hire" and that Evolution would own the copyright in such music.  The contract also included a certification signed by Mr. Lazar that "***all musical material submitted by me in connection with the television series*** [*i.e.* RHOBH]" would be works made for hire.  This language plainly encompasses the Theme, and Mr. Lazar signed this same certification multiple times in subsequent years when he amended his contract to incorporate the music he wrote for subsequent seasons of

RHOBH.  In addition, Mr. Lazar's contract included a backup assignment provision, which expressly provided that in the event the music that he composed for RHOBH was found for any reason not to be a work made for hire, Mr. Lazar nevertheless **assigned the copyrights** in the music to Evolution.  This provision carried through all of the amendments that he signed over the years.  Mr. Lazar cannot rewrite his contract now, more than 15 years after the initial agreement.  *Second*, even if the contract language did not control here, case law in this Circuit clearly holds that when Mr. Lazar submitted the Theme to Evolution for use in RHOBH in exchange for payment, he granted an irrevocable, non-exclusive license for Evolution and its successors to use the Theme in RHOBH.

Mr. Lazar also cannot succeed on his claim for breach of contract seeking foreign mechanical royalties.  Mr. Lazar's contract provided no guarantee that he would receive such royalties.  Instead, the contract provided that mechanical royalties would be "calculated and paid in the same manner as mechanical royalties are calculated and paid" to Evolution by RHOBH's distributor.  It is undisputed that neither Evolution nor its parent company Metro-Goldwyn-Mayer Studios Inc. ("MGM") have been paid any mechanical royalties because Evolution's contract with the distributor, Bravo (which is not a party to this lawsuit), does not entitle Evolution to such royalties.  As a result, Evolution has not received any mechanical royalties and therefore has no obligation to pay any mechanical royalties to Mr. Lazar.

The implied covenant of good faith and fair dealing cannot save Mr. Lazar's contract claim because that doctrine cannot impose obligations not contemplated in the contract.  Mr. Lazar's contract provided that mechanical royalties "would be calculated and paid in the same manner as mechanical royalties are calculated and paid to [Evolution] by [Bravo]."  He therefore cannot use the implied covenant to require Evolution to pay royalties it did not receive or seek any written commitment or approval from Bravo related to mechanical royalties.

Because Mr. Lazar's copyright and breach of contract claims fail, his accounting claim also must fail.  Accounting is not an independent cause of action and therefore does not survive in the absence of Mr. Lazar's first two claims. Additionally, Evolution does not have information necessary to calculate damages for Mr. Lazar's breach of contract and copyright infringement claims.

## II.    SUMMARY STATEMENT OF PLAINTIFF'S CLAIMS

Claim 1:    Evolution infringed Mr. Lazar's copyright in the Theme.

Claim 2:    Evolution breached the 2010 Composer Agreement between Evolution and Mr. Lazar.

Claim 3:    Mr. Lazar is entitled to an accounting of Evolution's revenues derived from exploitations of the Theme and mechanical royalties collected for Mr. Lazar's other compositions for RHOBH.

## III.    ELEMENTS REQUIRED TO ESTABLISH PLAINTIFF'S CLAIMS AND EVIDENCE IN OPPOSITION

### A.    Elements Required to Establish Plaintiff's Claim for Copyright Infringement

1.    The plaintiff is the owner of a valid copyright; and

2.    The defendant copied original expression from the copyrighted work.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.5.

### B.    Evidence Opposing Plaintiff's Claim for Copyright Infringement

#### 1.    *Mr. Lazar Does Not Own the Copyright in the Theme Because It Is a Work Made for Hire for Evolution*

Mr. Lazar cannot claim to own the copyright in the Theme because he created it for Evolution pursuant to a work-made-for-hire contract.  The definition of a work made for hire includes works that are "specially ordered or commissioned for use . . . as a part of a motion picture or other audiovisual work, . . . if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire."  *Warren v. Fox Fam. Worldwide, Inc.*, 328 F.3d

3

1136, 1140 (9th Cir. 2003) (alterations in original) (quoting 17 U.S.C. § 101). In other words, music composed for use in a television show is a work for made hire where, as here, there is a written agreement to that effect. *Id.*

The "person for whom the work was prepared" owns the copyright to a work made for hire, not the person who created the work. 17 U.S.C. § 201(b). The only way the creator can retain the copyright in a work made for hire is through an express written instrument signed by both the creator and the person for whom the work was prepared. *Id.*

Evolution will present evidence showing the 2010 Composer Agreement between Mr. Lazar and Evolution clearly states that all the pieces of music Mr. Lazar created for RHOBH are works made for hire and that Evolution owned the copyrights. The Agreement provides that the "Score" Mr. Lazar created for RHOBH "shall be deemed to be 'works made for hire for [Evolution]" with Evolution being the owner of the copyright. The Agreement also defined the terms "Score" and "Music Cue" broadly to include "all additional music required by [Evolution]." Mr. Lazar confirmed this plain meaning of his contract when he signed its attachment certifying that he "composed ***all musical material submitted by me in connection with the television series*** [RHOBH], ***as a work made-for-hire*** for [Evolution]." He repeatedly reaffirmed this certification in amendments to the 2010 Composer Agreement addressing music he created for future seasons of RHOBH. He does not dispute that all of the background music he wrote for RHOBH are works made for hire under the contract. It is only the Theme that he claims is different.

Evolution also will present evidence that the Theme is a work that Mr. Lazar created and submitted for use in RHOBH at Evolution's request. It is therefore encompassed by the provisions that "all additional music required by [Evolution]" and "all musical material submitted by [Mr. Lazar] in connection with [RHOBH]" would be works made for hire. Additionally, Mr. Lazar's certification leaves no doubt that it was the objective clear intent of the parties that all of the music Mr.

Lazar would submit for use in RHOBH, including the Theme, would be works made for hire and that Mr. Lazar would not retain the copyright to any of these works. The 2010 Composer Agreement and its Amendments must be interpreted to give effect to this plain intent. *See City of Chino v. Jackson*, 97 Cal. App. 4th 377, 382 (2002).[1]

Evolution also intends to present evidence that Mr. Lazar's conduct reflected that the Theme was a work made for hire. For more than a decade, Mr. Lazar reviewed and approved music cue sheets for each episode of RHOBH, which reflected that Bravo, not Mr. Lazar, owned 100% of publishing for the Theme. During that time, Mr. Lazar never told anyone at Evolution or Bravo that he believed he owned the copyright in the Theme. Evolution expects to present evidence that Mr. Lazar offered to sign additional documents that would have further confirmed that Evolution owned the copyright to the Theme after an Evolution employee called him about the agreement for the Theme in 2023.

To this end, Evolution intends to present the testimony of Alan Lazar, Randy Gerston, Alex Baskin, and Paul Trombetta.

### 2. Mr. Lazar Expressly Assigned All Rights in His RHOBH Compositions and Masters, Including the Theme, to Evolution

The 2010 Composer Agreement's backup assignment provision ensures that Evolution owned the copyright to the Theme even if it subsequently were determined not to be a work made for hire. An assignment is an effective means of transferring copyright ownership under the Copyright Act. *See* 17 U.S.C. § 201(d)(1). In Section 3 of the contract, Mr. Lazar "irrevocably assign[ed]" the copyright to the Score and Masters to Evolution. As explained above, the Theme is clearly part of the Score, which is defined to include "all additional music required by [Evolution]."

---

[1] The 2010 Composer Agreement provides that it must be interpreted according to California Law.

Courts considering similar backup assignment provisions in work-made-for-hire contracts have held that they effectively transfer copyright ownership to the assignee. *See, e.g.*, *Mindlab Media, LLC v. LWRC Int'l, LLC*, 2013 WL 1141987, at *5 (C.D. Cal. Mar. 18, 2013); *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1429, 1434 (N.D. Cal. 1997). Similarly, the backup assignment provision in Mr. Lazar's 2010 Composer Agreement transferred the copyright in the Theme to Evolution even if the Theme were not a work made for hire.

To this end, Evolution intends to present the testimony of Alan Lazar, Randy Gerston, and Alex Baskin.

### 3. *At a Minimum, Evolution Has an Irrevocable Implied License to Use the Title Theme, Which Defeats Mr. Lazar's Copyright Infringement Claim*

Even if the Theme were not a work for hire, and even if Mr. Lazar had not expressly assigned it to Evolution, Mr. Lazar's copyright claim must still fail. By fulfilling Evolution's request to write a main title theme for RHOBH in exchange for payment, Mr. Lazar granted Evolution an irrevocable implied nonexclusive license to use the Theme. An implied nonexclusive license is granted through conduct when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008) (quoting *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 776 (7th Cir. 1996)). The license becomes irrevocable when the licensor receives consideration from the licensee. *Id.* at 757; 3 Nimmer on Copyright § 10.02[A][5] (2025).

Evolution intends to present evidence that all three factors, plus consideration, are present here. *First*, Evolution requested that Mr. Lazar create the Theme. *Second*, Mr. Lazar created the Theme and delivered it to Evolution. *Third*, Mr. Lazar intended the Theme to be used in and distributed with RHOBH as evidenced by,

among other things, his continued participation in writing music for the series and over a decade passing with his acquiescence in RHOBH's use of the Theme. These facts will show that Mr. Lazar granted a non-exclusive implied license in the Theme to Evolution and that this license is made irrevocable by the consideration of Evolution's $3,500 payment to Mr. Lazar for the Theme. *See Kolton v. Universal Studios, Inc.*, 2004 WL 3242338 (C.D. Cal. Dec. 14, 2004) (Anderson, J.) (finding an irrevocable, non-exclusive implied license where a composer was paid to create music for a television show).

### 4.    Mr. Lazar's Claim for Copyright Infringement Is Barred by the Three-Year Statute of Limitations That Applies to Disputes Based on Copyright Ownership.

Ownership is the disputed issue in Mr. Lazar's copyright claim. Mr. Lazar claims that he, not Evolution, owns the Theme, and Evolution disputes this. Mr. Lazar's claim for copyright infringement is therefore barred by the three-year statute of limitations under Section 507 of the Copyright Act. *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1255 (9th Cir. 2013). When an ownership claim is time-barred, "and ownership is the dispositive issue, any attendant infringement claims must fail." *Id.* (quoting *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011)). This rule applies where the parties are in a close relationship and there has been an express repudiation of the plaintiff's ownership claim. *Zahedi v. Miramax*, *LLC*, 2022 WL 4596551, at *6 (C.D. Cal. Aug. 19, 2022).

Evolution will present evidence that both elements apply. In *Zahedi*, the court found a close relationship where the plaintiff created the work at issue the defendant's request and granted the defendant at least a limited license to use it for certain purposes. *Id.* That is certainly the case here where, as Evolution will show, Evolution asked Mr. Lazar to create the RHOBH Theme for use in RHOBH and Mr. Lazar submitted it to be used for that purpose. Evolution will also show that it expressly repudiated any ownership by Mr. Lazar. Year after year, Evolution

presented Mr. Lazar with certificates of authorship requiring him to confirm that *all* the music he created for RHOBH were works made for hire, and asked Mr. Lazar to approve cue sheets reflecting Bravo's ownership of the Theme.

Mr. Lazar cannot claim that the statute should be tolled because for years he understood that the Theme was a work made for hire. A lack of knowledge of ownership rights is a mistake of law, which is not a basis for invoking the discovery rule. *Conley v. Vacanti*, 2025 WL 1042239, at *6 (S.D. Fla. Mar. 3, 2025), *report and recommendation adopted in relevant part*, 2025 WL 1789313 (S.D. Fla. June 30, 2025); *A.T. v. Everett Sch. Dist.*, 300 F. Supp. 3d 1243, 1259 (W.D. Wash. 2018) (citing *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1048 (9th Cir. 2008)) (holding, in the civil rights context, that the federal discovery rule "does not . . . focus on when the plaintiff learns that the 'injury constitutes a legal wrong.'"). This exact argument was rejected in *Conley*. There, a software developer knew that the defendant was using his software for years used but was unaware that he had exclusive ownership rights. The court found this was a mistake of law that was barred by the statute of limitations. *Id.* Evolution will show that, even if the issue is deemed a claim about infringement rather than ownership, Mr. Lazar is limited to actual damages or profits only for the three years prior to his filing of the lawsuit. He is not entitled to recover statutory damages or attorneys' fees because he did not register his copyright until after the alleged infringement had commenced. *See* 17 U.S.C. § 412. Mr. Lazar will not be able to present any admissible evidence of actual damages. With respect to profits, Evolution will present evidence that only a miniscule portion of the net revenues it received related to RHOBH could be attributed to the value of the music that Mr. Lazar composed, which is an easily substitutable commodity in the context of reality television programming.

To this end, Evolution intends to present the testimony of Alan Lazar, Randy Gerston, Alex Baskin, Paul Trombetta, and expert witness Marc Graboff.

### C. <u>Elements Required to Establish Plaintiff's Claim for Breach of Contract</u>

1. That Mr. Lazar and Evolution entered into a contract;

2. That Mr. Lazar did all, or substantially all, of the significant things that the contract required him to do;

3. That Evolution failed to do something that the contract required him to do;

4. That Mr. Lazar was harmed; and

5. That Evolution's breach of contract was a substantial factor in causing Mr. Lazar's harm.

*See* Judicial Council of California Civil Jury Instructions ("CACI") No. 303 (2025); *Naranjo v. Drs. Med. Ctr. of Modesto, Inc.*, 111 Cal. App. 5th 408, 430 (2025).

### D. <u>Evidence Opposing Plaintiff's Claim for Breach of Contract</u>

Evolution will present evidence that the plain terms of the 2010 Composer Agreement peg any mechanical royalties that Mr. Lazar could be owed under the Agreement to the way mechanical royalties are "calculated and paid" by Bravo to Evolution under Evolution's distribution agreement with Bravo.

Section 6 of the 2010 Composer Agreement between Mr. Lazar and Evolution provides:

> The Score shall be licensed upon the same terms and conditions as are applicable to Producer pursuant to the distribution agreement between Producer and its distributor(s). . . . Mechanical royalties with respect to the Score shall be calculated and paid in the same manner as mechanical royalties are calculated and paid pursuant to such agreement.

It is undisputed that Evolution never received any foreign mechanical royalties attributable to the music that Mr. Lazar composed for RHOBH. The Production Services Agreement between Evolution and Bravo does not contain any obligation for Bravo to collect and pay over to Evolution foreign mechanical royalties generated by music created for RHOBH. Because no foreign mechanical

royalties were ever "calculated and paid" by Bravo to Evolution, Evolution in turn had no obligation under the 2010 Composer Agreement to "calculate and pay" foreign mechanical royalties to Mr. Lazar.

Evolution intends to present evidence that the 2010 Composer Agreement and Amendments unambiguously condition mechanical royalties on amounts "actually received," and that no such mechanical royalties have ever been received by Evolution. Consequently, Mr. Lazar's breach of contract claim fails as a matter of law. *See Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) ("[U]ncorroborated and self-serving testimony," without more, will not "create a genuine issue of material fact."). Mr. Lazar cannot claim he was somehow fooled into accepting the mechanical royalties provision. Evolution will present evidence that Mr. Lazar had more than a decade of experience as a television music composer when he signed the 2010 Composer Agreement, and he agreed to the same provision again six years later in his agreement for RHOOC while he was represented by an agent and long after it was clear Mr. Lazar had not earned any foreign mechanical royalties from RHOBH.

Finally, Mr. Lazar will not be able to present any admissible evidence as to the amount of foreign mechanical royalties generated by the music he composed for RHOBH. Evolution intends to present evidence that the total amount of mechanical royalties paid to Bravo's music publisher during the applicable limitations period is less than approximately $35,000. Evolution also will present evidence that the value of the music used in RHOBH, including the value of future foreign mechanical royalties, were not a factor in the negotiations between Evolution and Bravo or in the consideration that Bravo paid to Evolution for producing the show.

To this end, Evolution intends to present the testimony of Alan Lazar, Randy Gerston, expert witness Marc Graboff, and possibly the Custodian of Records from NBCUniversal/Bravo and the Custodian of Records for Universal Music Publishing Group.

### E. Elements Required to Establish Plaintiff's Claim for Accounting

1. A relationship exists between the plaintiff and defendant that requires an accounting; and

2. Some balance is due the plaintiff that can only be ascertained by an accounting.

*Sass v. Cohen*, 10 Cal. 5th 861, 869 (2020).

### F. Evidence Opposing Plaintiff's Claim for Accounting

The evidence opposing Mr. Lazar's copyright infringement and breach of contract claim also opposes his accounting claim. An accounting is not an independent cause of action. *Duggal v. G.E. Cap. Commc'ns Servs., Inc.*, 81 Cal. App. 4th 81, 95 (2000). It is "derivative and depends on the validity of a plaintiff's underlying claims." *Id*. In the absence of a separate valid claim, a "cause of action for an accounting must fail." *Id*. Thus, the same evidence that shows plaintiff's copyright and accounting claims are invalid also shows that his accounting claim is invalid.

Additionally, Evolution will present evidence that Evolution does not have information relevant to ascertain damages for Mr. Lazar's copyright and breach of contract claims. To this end, Evolution expects to present the testimony of Alex Baskin, and the custodians of records for NBCUniversal Media, LLC and Bravo Media LLC.

## IV. DEFENDANT'S AFFIRMATIVE DEFENSES

### A. Summary Statement of Defendant's Affirmative Defenses

Affirmative Defense 1: Mr. Lazar fails to state a claim.

Affirmative Defense 2: Mr. Lazar lacks standing to bring his copyright claim.

Affirmative Defense 3: Mr. Lazar's copyright registrations are invalid.

Affirmative Defense 4: Mr. Lazar expressly licensed Evolution's use of the Theme and nonpayment of foreign mechanical royalties.

11

Affirmative Defense 5:    Mr. Lazar granted an irrevocable nonexclusive implied license to Evolution to use the Theme.

Affirmative Defense 6:    Mr. Lazar's claims are barred by the three-year statute of limitations found in 17 U.S.C. § 507(b) and California Civ. Proc. Code § 337(a).

Affirmative Defense 7:    Mr. Lazar waived his copyright claim.

Affirmative Defense 8:    Mr. Lazar is estopped from bringing his copyright and breach of contract claims.

Affirmative Defense 9:    Mr. Lazar has unclean hands because he infringed copyright in the compositions he created as works made for hire by posting them on his website for the public to stream.

Affirmative Defense 10:  Mr. Lazar' copyright claim is barred by the doctrine of laches.

Affirmative Defense 13:  Mr. Lazar's copyright and breach of contract claims are barred by the doctrine of ratification because Mr. Lazar acquiesced in Evolution's use of the Theme and nonpayment of mechanical royalties for over a decade.

**B.    <u>Elements Required to Establish Defendant's Affirmative Defenses and Supporting Evidence</u>**

### 1.    *Failure to State a Claim*

<u>Elements of the Defense of Failure to State a Claim</u>

To state a claim, Mr. Lazar's Complaint must allege facts sufficient to establish the prima facie elements of all his claims against Evolution. *See* Fed. R. Civ. P. 8(a).

<u>Evidence Supporting the Defense of Failure to State a Claim</u>

As detailed above in Section III, Mr. Lazar has failed to establish any of his three claims.  Mr. Lazar fails to state a claim for copyright infringement because he does not own the Theme.  Evolution will present evidence that, under Mr. Lazar's

composer agreement, the Theme was a work made for hire and Mr. Lazar assigned it to Evolution. As detailed above in Section III.B.3, even in the absence of the contract, Mr. Lazar granted an irrevocable nonexclusive implied license in the Theme to Evolution. Mr. Lazar's breach of contract claim for non-payment of foreign mechanical royalties also fails because Mr. Lazar's contract did not entitle him to receive any such royalties that Evolution did not receive. Finally, Mr. Lazar's accounting claims fail as a matter of law because his other claims fail.

### 2. *Lack of Standing*

<u>Elements of the Defense of Lack of Standing</u>

To establish standing for his copyright claim, Lazar must demonstrate that he was the owner or exclusive licensee of the work he asserts at the time of the infringements he asserts.

*See Lanard Toys Ltd. v. Novelty Inc.*, 511 F. Supp. 2d 1020, 1033 (C.D. Cal. 2007); 17 U.S.C. §§ 201–205, 501.

<u>Evidence Supporting the Defense of Lack of Standing</u>

As detailed above in Section III.B, Mr. Lazar was neither the owner nor exclusive licensee of the Theme in this case. Evolution will present evidence that Mr. Lazar's Composer Agreement and later amendments thereto provides the Theme is a work made for hire for Evolution, and that Mr. Lazar expressly assigned the copyright in the Theme to Evolution. As detailed above in Section III.B.3, even in the absence of the contract, Mr. Lazar granted an irrevocable nonexclusive implied license in the Theme to Evolution.

### 3. *Invalidity*

<u>Elements of the Defense of Invalidity</u>

1. Mr. Lazar does not own a valid copyright in the work at issue.

*See Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1553 (9th Cir. 1989).

EVOLUTION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
CASE NO. 2:24-cv-09748-SVW-KS

Evidence Supporting the Defense of Invalidity

As detailed above in Section III, Mr. Lazar has failed to establish any of his three claims. Mr. Lazar fails to state a claim for copyright infringement because he does not own the Theme. Evolution expects to present evidence that, under Mr. Lazar's composer agreement, the Theme was a work made for hire and Mr. Lazar assigned it to Evolution. As detailed above in Section III.B.3, even in the absence of the contract, Mr. Lazar granted an irrevocable nonexclusive implied license in the Theme to Evolution.

### 4.    Express License

Elements of the Defense of Express License

To show the existence of an express license, Evolution must prove that it received an express license to use the copyrighted work. If Evolution proves this, the burden shifts to Lazar to show that Evolution's use of the copyrighted work exceeded the scope of the license.

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.25A.

Evidence Supporting the Defense of Express License

Evolution expects to present evidence that, under the 2010 Composer Agreement, Mr. Lazar "irrevocably assign[ed]" copyrights to Evolution, including the copyrights of "all musical material submitted by [Mr. Lazar] in connection with [RHOBH]." Mr. Lazar's assignment constitutes an express license for Evolution to use the Theme.

### 5.    Implied License

Elements of the Defense of Implied License

1.    Evolution requested that Mr. Lazar create the work;

2.    Mr. Lazar made that particular work and delivered it to Evolution; and

3.    Mr. Lazar intended that Evolution use the work.

Additionally, the license is irrevocable if Evolution provided Mr. Lazar consideration for the work.

14

*See* Ninth Circuit Manual of Model Civil Jury Instructions § 17.25; *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 748, 754–55 (9th Cir. 2008).

<u>Evidence Supporting the Defense of Implied License</u>

As detailed above in Section III.B.3, Evolution expects to present evidence that Evolution asked Mr. Lazar to create the Theme in at least one email, that Mr. Lazar made the Theme and delivered it to Evolution via email with the intent that it be used on RHOBH.  Additionally, Evolution will present evidence that it paid Mr. Lazar at least $3,500 as consideration for the Theme, making the license irrevocable. To this end, Evolution expects to present testimony of Mr. Lazar, Randy Gerston, Alex Baskin, and Paul Trombetta

### 6. *Statutes of Limitations*

<u>Elements of the Defense of Statute of Limitations – Copyright</u>

Pursuant to 17 U.S.C. § 507(b), Evolution is not liable for any alleged copyright infringement that occurred more than three years before Mr. Lazar filed this action on November 12, 2024.  Additionally, Section 507(b) bars Mr. Lazar's claim entirely to the extent the gravamen of the dispute is ownership, which depends on three factors:

1. That copyright ownership is the dispositive issue in Mr. Lazar's copyright claim;

2. That Evolution took unequivocal acts of ownership over the work plainly and expressly repudiating Mr. Lazar's ownership of the work more than three years prior to Mr. Lazar's suit;

3. That Evolution and Mr. Lazar have a close relationship.

*See* 17 U.S.C. § 507(b); *Seven Arts Filmed Entm't Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251 (9th Cir. 2013); *Zuill v. Shanahan*, 80 F.3d 1366 (9th Cir. 1996).

<u>Evidence Supporting the Defense of Statute of Limitations – Copyright</u>

Evolution will present evidence that Evolution used the Theme as any owner would.  It reused the Theme in each episode and in each season of RHOBH without

15

asking Mr. Lazar for permission.  Additionally, almost every year after Mr. Lazar authored the Theme, Evolution presented certifications of authorship to Mr. Lazar, which he signed, stating that all works he submitted in connection with RHOBH were works made for hire.  Mr. Lazar wrote music for Evolution and RHOBH for over a decade, demonstrating their close relationship.  Mr. Lazar was also fully aware that the Theme was being used on RHOBH beginning with the premiere of season one of the show, which he attended.  This fact prevents him from asserting that the discovery rule tolled the statute.  At a minimum, any recovery for copyright infringement should be limited to the three-year limitations period preceding the filing of the complaint.  17 U.S.C. § 507(b).

Elements of the Defense of Statute of Limitations – Breach of Contract

1.    Mr. Lazar's claimed harm occurred more than four years before Mr. Lazar filed this lawsuit on November 12, 2024.

*See* 1 California Forms of Jury Instruction 338 (Matthew Bender, 2025); Cal. Civ. Proc. Code § 337; *Rich v. Shrader*, 823 F.3d 1205 (9th Cir. 2016).

Evidence Supporting the Defense of Statute of Limitations – Breach of Contract

To the extent Mr. Lazar presents evidence that he suffered any harm from any alleged breach of his contract with Evolution, Evolution will establish what if any of that harm occurred more than four years before this action was filed.  Evolution expects to do so through testimony of Mr. Lazar and non-parties NBCUniversal and Universal Music Publishing Group.  At a minimum, any recovery for breach of contract should be limited to the four-year limitations period preceding the filing of the complaint.  Cal. Civ. Proc. Code § 337.

### 7.    *Waiver*

Elements of the Defense of Waiver

1.    Mr. Lazar surrendered a copyright interest in his work; and

2.    Mr. Lazar manifested an intention to surrender his interest through an affirmative act.

16

*See Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1398 (C.D. Cal. 1990); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001); *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006).

<u>Evidence Supporting the Defense of Waiver</u>

As detailed above in Section III.B.3, Evolution expects to present evidence that Evolution asked Mr. Lazar to create the Theme in at least one email and that Mr. Lazar made the Theme and delivered it to Evolution via email with the intent that it be used on RHOBH.  Additionally, Evolution will present evidence that Mr. Lazar manifested an intention to surrender any copyright interest in the Theme by signing his 2010 Composer Agreement, the certificate of authorship, and then signing additional certificates of authorship almost every year for ten years stating that music he submitted in connection with RHOBH were works made for hire.

### 8.    *Estoppel*

<u>Elements of the Defense of Estoppel – Copyright</u>

1.    Mr. Lazar knew the facts of Evolution's allegedly infringing conduct;

2.    Mr. Lazar's statements or conduct (either action or inaction) caused Evolution to believe that Lazar would not pursue a claim for copyright infringement against Evolution;

3.    Mr. Lazar intended for Evolution to act on his statement or conduct, or Evolution had a right to believe Lazar so intended;

4.    Evolution did not reasonably believe that Lazar would pursue a claim for copyright infringement against it; and

5.    Evolution was injured as a result of its reliance on Lazar's statements or conduct.

*See* Modern Federal Jury Instructions-Civil § 9.28 (Matthew Bender, 2025); *Hadady Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1399 (C.D. Cal. 1990).

Supporting Evidence

Evolution will present Evidence that Mr. Lazar knew that Evolution was using the Theme on RHOBH.  Evolution will present testimony from Mr. Lazar that he attended the premiere of RHOBH, continued to write music for RHOBH for a decade, and approved cue sheets reflecting the Theme and Bravo's 100% ownership of the publishing.  Evolution will also present evidence that Mr. Lazar intended for Evolution to continue to use the Theme in RHOBH.  Evolution expects to present testimony from Mr. Alex Baskin and Mr. Paul Trombetta that Evolution did not expect that Mr. Lazar would bring a copyright claim due to Mr. Lazar's conduct, including offering to sign additional paperwork to further confirm Evolution's ownership of the Theme.

### 9.    *Unclean Hands*

Elements of the Defense of Unclean Hands

1.    Mr. Lazar engaged in inequitable conduct;

2.    Mr. Lazar's conduct directly relates to the claim which he has asserted against Evolution; and

3.    Mr. Lazar's conduct injured Evolution.

*See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1223 (C.D. Cal. 2007).

Evidence Supporting the Defense of Unclean Hands

Evolution expects to present evidence that Mr. Lazar distributed music he created as works for hire for Evolution on his personal website to promote his personal business and generate profits thereby.  Evolution anticipates eliciting testimony from Mr. Lazar that he did so even though he knew that he did not own the copyright to these works.  Evolution will also present evidence that Mr. Lazar's conduct amounts to unlicensed distribution of music created for RHOBH that is directly related to the conduct Mr. Lazar alleges Evolution engaged in with respect to the Theme.

18

### 10. Laches

Elements of the Defense of Laches

To prove that Lazar's copyright claims are barred by the defense of laches, Evolution must show:

1. Unreasonable delay in the assertion of the claim; and

2. Prejudice as a result of the delay.

*See Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001).

Evidence Supporting the Defense of Laches

Mr. Lazar filed his copyright claim over a decade after Evolution's first use of the Theme. Evolution expects to present testimony of Mr. Baskin and others that Evolution relied on an understanding that there was no copyright dispute over the Theme and had used the Theme in RHOBH understanding that Evolution was the uncontested owner of the copyright and thus free to assign all rights to the show to Bravo.

### 11. Ratification

Elements of the Defense of Ratification

1. Mr. Lazar voluntarily accepted the benefit of a transaction; and

2. Mr. Lazar knew or ought to have known of the relevant facts of the transaction.

*See* Cal. Civ. Code §§ 1588, 1589.

Evidence Supporting the Defense of Ratification

To the extent Mr. Lazar may argue that the implied license he granted in the Theme is an invalid or voidable agreement, Evolution expects to present evidence that he ratified this agreement by accepting the benefits under it with full knowledge that this involved relinquishing any copyright claim he may have had in the Theme. Evolution expects to present evidence that Mr. Lazar accepted $3,500 for composing the Theme and thereafter accepted over $1.6 million dollars in performance royalties from the music he created for RHOBH, including the Theme. Similarly, as discussed

19

above, Evolution will present evidence that Mr. Lazar repeatedly signed certificate of authorship almost every year for a decade stating that all the music he created in connection with RHOBH was a work made for hire, showing he ought to have known that the condition of continuing to earn performance royalties from continued use of his music on RHOBH, including the Theme, was relinquishing any claim to copyright in that music.

## V.    EVIDENTIARY ISSUES

### A.    Plaintiff's Expert, Johnathan Clifford, Cannot Provide Any Admissible Testimony.

The court should exclude the testimony of Mr. Lazar's expert, Johnathan Clifford. Mr. Clifford did not rely upon any data, studies, royalty statements, or other documents in forming his opinions in this case. He drafted his expert report using ChatGPT including charts therein. His conclusions are entirely speculative and not the product of reliable principles or methods. Mr. Clifford's main conclusion is speculation about a range of possible mechanical royalties that Mr. Lazar's compositions for RHOBH might have earned, but Mr. Clifford did not perform any calculation to arrive at these percentages, while admitting that the amount of mechanical royalties received for a given program can vary widely from country to country depending on multiple factors that Mr. Clifford did not consider. (Indeed, he did not even determine in which countries RHOBH is distributed and focus his analysis on those countries.) Additionally, Mr. Clifford concedes that a composer's entitlement to mechanical royalties is almost always governed by their contracts, yet he did not review or consider Mr. Lazar's contract.

### B.    Plaintiff's Damages Evidence Is Entirely Speculative and Should Be Excluded.

Mr. Lazar's evidence of damages is entirely speculative. No one has performed a calculation of Mr. Lazar's damages in this case. Lazar has not done so and has testified that he was not qualified to do so. Mr. Lazar's only expert,

Johnathan Clifford, testified that he had not performed a damages calculation and had not even reviewed Mr. Lazar's royalty statements, which he admitted was necessary to calculate the mechanical royalties that Mr. Lazar claims were generated by his compositions for RHOBH and should have been paid to him by Evolution. Neither Mr. Lazar nor Mr. Clifford can present any admissible evidence as to the amount of mechanical royalties generated in foreign countries by music he composed for RHOBH during the relevant limitations period.

C.    **Damages Evidence Outside the Applicable Statute of Limitations Period Should Be Excluded.**

Mr. Lazar's decade-old copyright infringement and breach of contract claims are both subject to statutes of limitations that limit the period or relevant damages evidence.  The copyright act has a three-year statute of limitations.  17 U.S. Code § 507.  Therefore, evidence of copyright damages that predates three years before Mr. Lazar filed suit on November 12, 2024 is irrelevant and inadmissible.  California law provides a four-year statute of limitations for claims based on written contracts. Cal. Civ. Proc. Code § 337.  Therefore, damages evidence of breach of contract damages predating four years before Mr. Lazar filed suit in this matter is irrelevant and inadmissible.  Mr. Lazar knew that the Theme was being used in RHOBH from the show's premiere in 2010.  Yet he continued to write music for RHOBH for a decade, and approved numerous cue sheets reflecting the Theme, as well as Bravo's 100% ownership of the publishing of the Theme.  Additionally, Mr. Lazar has known he was not being paid any foreign mechanical royalties for much more than four years.  Consequently, the discovery does not toll the statute of limitations for either claim.

D.    **Mr. Lazar's Subjective Beliefs and Aspirations Regarding His 2010 Composer Agreement with Evolution Are Not Admissible.**

Mr. Lazar's statements regarding his subjective intent in entering into the 2010 Composer Agreement are irrelevant because the plain language of the

21

Agreement is clear.  Cal. Civ. Code § 1638; *Vaillette v. Fireman's Fund Ins. Co.*, 18 Cal. App. 4th 680, 690 (1993) ("The true, subjective, but unexpressed intent of a party is immaterial and irrelevant.").  The Agreement plainly states that mechanical royalties would be calculated and paid in the same manner as mechanical royalties are calculated and paid pursuant to Evolution's agreement with its distributor, Bravo. ECF No. 29-7 at 3.  Conclusory, self-serving statements are insufficient to create a genuine dispute where the contract's terms are clear.  *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (self-serving affidavit insufficient to create triable issue).

E.    **Witnesses Should Not Be Permitted to Speculate Regarding the Reasons Bravo Contacted Various Parties Regarding an Agreement for the RHOBH Theme.**

Mr. Lazar will likely seek to introduce testimony from himself and Mr. Paul Trombetta regarding Bravo's communications with Evolution requesting a contract for the Theme.  Neither Mr. Lazar nor Mr. Trombetta have personal knowledge of the reason or reasons that Bravo contacted Evolution regarding a contract for the Theme, so any testimony on this subject from either witness is pure speculation and inadmissible.  Fed. R. Evid. 602.  Testimony from either witness regarding Bravo's statements on this subject offered for their truth is also inadmissible hearsay.  Fed. R. Evid. 802.  Such testimony is not subject to the opposing party statement hearsay exemption because Bravo is a non-party.

## VI.    BIFURCATION OF ISSUES

Evolution requests that a trial on liability for Mr. Lazar's copyright and breach of contract claims be bifurcated from the issue of damages.  Courts have broad authority to try issues or claims separately pursuant to Rule 42(b) of the Federal Rules of Civil Procedure.  Bifurcation is appropriate to avoid prejudice, simplify and expedite the issues, or promote efficient use of resources for the parties and the court. *Jinro Am. Inc. v. Secure Invs., Inc.*, 266 F.3d 993, 998 (9th Cir. 2001).  Bifurcation

22

would accomplish all three of these ends here.  The questions in this case that determine liability have nothing to do with damages.  These liability questions center on the interpretation of Mr. Lazar's contract and whether he granted an implied license in the Theme to Evolution.  In contrast, the question of the amount of damages might be owed involves complex calculations involving royalty and revenue statements, none of which has anything to do with liability.  Here, the complexity of any damages calculation would be is enhanced because the music Mr. Lazar created was distributed as part of a television show that was distributed in various formats.  *Bassil v. Webster*, 2021 WL 1235258, at *2 (C.D. Cal. Jan. 15, 2021) ("One of the most difficult problems in the computation of profits for which the defendant is liable arises when the infringing work inextricably intermingles noninfringing material with plaintiff's protectable material.").  Permitting a first trial on liability questions would greatly simplify the issues and evidence presented and potentially avoid the need for a trial on the damages issues all together, making more economic use of the parties' and the Court's resources.  Additionally, evidence on the total revenue Evolution made from RHOBH may prejudice the factfinder with respect to the unrelated issue of liability.[2]  A bifurcated proceeding also is consistent with Mr. Lazar's complaint request that, in the event he prevails on either of his substantive claims, the Court should exercise its equitable authority to oversee an accounting to determine the appropriate amount of any recovery.

Accordingly, multiple factors counsel in favor of bifurcation here.

## VII.   JURY TRIAL

Both Mr. Lazar and Evolution had demanded a jury trial on all issues.

---

[2] Mr. Lazar is wrong that the amount of revenue Evolution earned is relevant to the sufficiency of consideration for the Theme because Mr. Lazar received $3,500 for the Theme which, as a matter of law, is far more than "the peppercorn of consideration the law requires."  *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 & n.5 (1995).

### VIII. ATTORNEYS' FEES

The court may allow the prevailing party in a copyright action to recover its full costs, including a reasonable attorney's fee. 17 U.S. Code § 505. Evolution intends to seek its attorneys' fees and costs incurred in this action, including, but not limited to, all court costs, filing fees, and reasonable attorney's fees.

### IX.    ABANDONMENT OF ISSUES

Evolution has abandoned its affirmative defenses of failure to mitigate and release. Otherwise, Evolution is not abandoning any of its affirmative defenses or issues at this time.

Dated:  September 15, 2025

JENNER & BLOCK LLP

By:  _____
Andrew J. Thomas
Eric W. Wolff

Attorneys for Defendant
EFT Media Productions LLC d/b/a
Evolution Media

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant EFT Media Productions LLC d/b/a Evolution Media, certifies that this brief is less than 25 pages, which complies with the page limit set by the Court's November 19, 2024 New Case Order (ECF No. 12).

Dated:  September 15, 2025

Andrew J. Thomas