JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

**Present: The Honorable**    STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Daniel Tamayo | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

**Proceedings:**    ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [29]

## I.    Introduction

At bar is a copyright infringement and breach of contract case, filed by Plaintiff Alan Lazar ("Lazar") on November 12, 2024. At this point, the sole named defendant in the case is EFT Media Productions LLC ("Evolution"). Before the Court is Evolution's motion for summary judgment ("Mot."), ECF No. 29. For the following reasons, the Court GRANTS Evolution's motion.

## II.    Relevant Background

This case concerns disputes about music composed by Plaintiff Lazar for a television show entitled *The Real Housewives of Beverly Hills* ("RHOBH"), the sixth of eleven installments of the American reality television franchise: *The Real Housewives*. Evolution's Response to Plaintiff's Statement of Genuine Disputes ("SUF"), ECF No. 62-1 at ¶¶ 1, 4, 5; Declaration of Alex Baskin ("Baskin Decl."), ECF No. 29-3 at ¶¶ 5, 7; *see also* First Amended Complaint ("FAC"), ECF No. 16.

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

RHOBH, along with the rest of *The Real Housewives* franchise airs on the Bravo cable network ("Bravo"). SUF ¶ 2; Baskin Decl. ¶ 5. RHOBH is produced by Defendant Evolution, which has produced fourteen seasons of the show, under contract with Bravo, since 2009—with the first season premiering in October 2010, the most recent season concluding in April 2025, and a fifteenth season currently in production. SUF ¶¶ 6-10, 12; Baskin Decl. ¶¶ 6-8; Production Services Agreement ("PSA"), ECF No. 34 (filed under seal).

### A. The Agreement

Since production of RHOBH's first season until at least 2020, Plaintiff Lazar has composed music for Evolution that has appeared in episodes of the RHOBH show. SUF ¶ 41. Related to these compositions, on June 16, 2010—before the first season aired—Evolution and Lazar executed a signed agreement (the "Agreement"), ECF No. 29-7; SUF ¶ 16. *Inter alia*, the Agreement dictated that "for good and valuable consideration…[Lazar] shall render non-exclusive first priority services to compose, arrange, produce, and record such original music as may be required sufficient to constitute bumper music, source music and all additional music required by [Evolution] (each a 'Music Cue' or 'Music Cues' and collectively, the 'Score') in connection with the first production cycle of the [RHOBH] Series." Agreement § 1(a). Regarding compensation, the Agreement provided that "[Evolution] shall pay [Lazar] the total sum of Two Hundred Twenty-Five Dollars ($225) for each Music Cue provided to and accepted by [Evolution], with a guarantee of fifty (50) Music Cues…" Id. at § 2(a).

Regarding copyrights, the Agreement provided, *inter alia*, "[Evolution] shall own the worldwide copyright in perpetuity in and to the Score and the Masters, and that for this purpose said Score and Masters shall be deemed to be 'works made-for-hire' for [Evolution] with [Evolution] being deemed the author thereof and the exclusive owner of all rights of every kind and nature." Agreement § 3. Regarding ownership, the Agreement provided, "[Evolution], its respective licensees, successors and assigns shall exclusively own all right, title and interest in and to the Score and the Masters" and enumerated specific rights for various merchandizing and exploitations of the Score. Agreement § 4. Regarding mechanical rights, the Agreement provided, "Mechanical Royalties with respect to the Score shall be calculated and

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | |

paid in the same manner as mechanical royalties are calculated and paid pursuant to the distribution agreement between [Evolution] and [Bravo]." Agreement § 6.

In the intervening years between 2010 and 2020, Evolution and Lazar nearly annually executed Amendments to the Agreement, making minor adjustments—such as to the amount of guaranteed Music Cues or the compensation per cue—but functionally reaffirming the continuing force and effect of the Agreement. ECF Nos. 29-14; 29-15; 29-17; 29-18; SUF ¶¶ 72, 85-92. These amendments were accompanied by Certificates of Authorship, wherein Lazar repeatedly certified, "I, Alan Lazar, hereby certify that I composed and recorded all musical material submitted by me, including, without limitation, [that season's Music Cues], in connection with the television program [RHOBH] as a work made-for-hire for [Evolution], pursuant to [the Agreement]." Id.

### B. The Theme

Plaintiff Lazar also composed and submitted to Evolution the Theme Song for the RHOBH series (the "Theme"), which has been used continually since the premiere episode. SUF ¶¶ 30, 33; Deposition of Alan Lazar ("Lazar Depo."), ECF No. 29-6 at 52:12-53:7.

Lazar's composition of the Theme originated with correspondence between Lazar and Dave Rupel ("Rupel"), an executive producer of RHOBH; the correspondence was memorialized in an email from July 7, 2010, wherein Rupel asked Lazar to compose a title theme for the show. Lazar Depo at 41:18-43:6; ECF No. 29-8 at 3-4; SUF ¶ 24. Between July 8 and September 23, 2010, Lazar submitted a total of eight drafts of the Theme. SUF ¶¶ 25, 28. After each of the first seven drafts was submitted, Lazar received comments on the draft, originating from both Evolution and Bravo, which would inform further revisions in the subsequent draft. Lazar Depo. at 43:8-45:21. The eighth draft ultimately became the Theme. SUF ¶ 29; Lazar Depo. 50:18-51:2. Evolution paid Lazar $3,500 for composing the Theme. SUF ¶ 32; Lazar Depo. At 30:2-7; ECF No. 29-10.

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

### C. The Lawsuit

On October 30, 2023, Lazar applied to register a copyright for the Theme. SUF ¶¶ 64; Lazar Depo. At 87:5-17; ECF No. 29-23. In November 2023, Lazar, through his attorney, informed Evolution that he claimed to own the copyright to the Theme. Baskin Decl. ¶ 13. On November 12, 2024, Lazar filed the instant lawsuit. ECF No. 1.

Lazar's complaint alleges two independent causes of action: (1) Copyright infringement for Evolution's exploitation of the Theme in the RHOBH series, and (2) Breach of Contract by Evolution for failure to pay mechanical royalties to Lazar for the Music Cues he composed—in alleged violation of the Agreement. First Amended Complaint ("FAC"). Under this second cause of action, Lazar alleges alternative theories of express breach and breach of the implied covenant of good faith and fair dealing. Id. at ¶ 41. Finally, Lazar requests an order directing Evolution to render an accounting of derived revenues to calculate a sum of royalties owed. Id. at ¶¶ 43-49.

On August 22, 2025, Evolution filed the instant motion for summary judgment. Mot. On August 29, 2025, Lazar opposed the motion. Opposition ("Opp."), ECF No. 37. On September 8, 2025, Evolution replied. ECF No. 62. At a hearing on September 29, 2025, the Court heard oral argument from the parties. ECF No. 106.

### III.    Legal Standard

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of . . . [the factual record that] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party satisfies its initial burden, the non-moving party must demonstrate with admissible evidence that genuine issues of material fact exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | |

the moving party has carried its burden under Rule 56 . . . its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "On an issue as to which the nonmoving party will have the burden of proof . . . the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Id.*

A material fact for purposes of summary judgment is one that "might affect the outcome of the suit" under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although a court must draw all inferences from the facts in the non-movant's favor, *id.* at 255, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, [the] court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    Discussion

### D.  Plaintiff's Copyright Infringement Claim

i.    <u>There is a Genuine Dispute of Fact as to Whether Lazar Composed the Theme as a Work-Made-For-Hire or Expressly Assigned the Copyright to Evolution</u>

Evolution contends that under the plain language of the Agreement, Lazar composed the Theme as a work-made-for-hire—therefore Evolution was the original owner of the copyright and is not liable for infringement as a matter of law. Mot. at 3-4. In the alternative, Evolution argues that Lazar at least assigned the copyright to Evolution in the Agreement. Mot. at 4.

By statute, a work specially ordered as a part of a motion picture or audiovisual work is a work-made-for-hire if the parties expressly agree in a written instrument signed by them that the work shall be

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | |

considered a work made for hire. 17 U.S.C. § 101. The significance of the work-made-for-hire designation is that the "employer or other person for whom the work was prepared"—in this case, Evolution—would be considered the author and own all the rights comprised in the copyright. 17 U.S.C. § 201.

Here, there is no genuine dispute that the Theme was specially ordered as a part of an audiovisual work. However, there *is* a dispute as to whether the Agreement expressly intended to designate the Theme as a work-made-for-hire. Resolving this question is a matter of contract interpretation.

In California, "under statutory rules of contract interpretation, the mutual intention of the parties at the time the contract is formed governs interpretation." *AIU Ins. Co. v. Sup. Ct.*, 799 P.2d 1253, 1264 (Cal. 1990) (citing Cal. Civ. Code § 1636). "Such intent is to be inferred, if possible, solely from the written provisions of the contract" based on their "ordinary and popular sense," unless a "technical sense or special meaning is given to them by their usage." *Id.* (citing Cal. Civ. Code §§ 1639, 1644, 1638). Accordingly, "[i]f the contractual language is clear and explicit, it governs." *MacKinnon v. Truck Ins. Exch.*, 73 P.3d 1205, 1213 (2003). Here, as explained, *supra II.A,* the express language of the Agreement states, in pertinent part, the "Score and the Masters shall be deemed to be 'works made-for-hire.'" Agreement at 2. Moreover, the Score is defined as "bumper music, source music and all additional music required by [Evolution]." Id. at 1. Accordingly, Evolution contends that "all additional music required by producer" necessarily includes the Theme. Mot. at 3.

However, there is at least a dispute of fact as to whether this contract provision referred to the Theme when it mentioned, "all additional music required."

*First*, California courts apply the principle of *ejusdem generis* ("of the same kind") to matters of contract interpretation. *See Nygard, Inc. v. Uusi-Kerttula*, 159 Cal.App.4th 1027, 1045-46 (2008). Under this principle, where a general catch-all phrase follows a specifically enumerated list, the catch-all category may be interpreted to be limited to items similar to those in the enumerated list. Here, "bumper music" and "source music" are an enumerated list that share the qualities of being short musical compositions created under specific direction for use in particular episodes within particular seasons. As

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | | Date | February 13, 2026 |
|---|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | | |

such, "all additional music" may be interpreted as limited to include only other such short musical cues, rather than the longer and arguably more substantial Theme, which appeared in every episode across seasons of the show, and which Lazar alleges he submitted for consideration by Evolution, in competition with other composers, rather than created at Evolution's request. Opp. at 10; SUF ¶ 80; Declaration of Alan Lazar ("Lazar Decl."), ECF No. 72 ¶ 5 ("the "Music Cues" that I was already contracted to compose were 'one-off' bumper music and cues which were only used in single instances in single episodes; whereas [the Theme] would be a longer, more substantial piece of music that would be played in every episode"); *see also* ECF No. 29-8 at 107 (where an executive producer of RHOBH wrote to Lazar, "Glad to hear you are interested in taking a shot at the main theme"). Therefore, it is reasonable to conclude that the Agreement is at least ambiguous as to whether it applies to the Theme. *See Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (Cal. 1995) (citations omitted) ("A contract term will be considered ambiguous when it is capable of two or more constructions, both of which are reasonable").

*Second*, the fact that Evolution paid different consideration for the Theme than was apparently laid out in the Agreement further introduces a dispute of fact as to whether the ambiguous language of the Agreement was intended to apply to musical works such as the Theme. It is undisputed that the Agreement contemplated $225 per 'Music Cue' accepted by Evolution. Agreement § 2(a). Furthermore, it is undisputed that Evolution compensated Lazar $3,500 for composing the Theme. SUF ¶ 32; Lazar Depo. At 30:2-7; ECF No. 29-10. This fact permits a reasonable inference in Lazar's favor because it tends to indicate that the Theme was negotiated separately from shorter, 'one-off' music cues, and therefore was not considered by the parties to be in the category of musical composition contemplated by the Agreement. *See Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992) (considering extrinsic evidence to resolve ambiguity in a contract).

For the above stated reasons, there is sufficient evidence to permit a reasonable jury to determine that Lazar and Evolution did not intend the Agreement to apply to the Theme. Therefore, on summary judgment, where the Court must resolve all reasonable inferences in favor of the non-moving party, the Court cannot find as a matter of law that Lazar expressly designated the Theme as a work-made-for-hire in the provision of the Agreement cited by Evolution.

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

Under the same reasoning, the Court cannot find that the 'Certificate of Authorship,' (the "CoA") attached to the Agreement and signed by Lazar, designated the Theme as a work-made-for-Hire. Nor can the Court find as a matter of law that the Agreement expressly assigned to Evolution any the rights to the Theme. The CoA stated, "I, Alan Lazar, hereby certify that I composed all musical material submitted by me in connection with the television series currently entitled [RHOBH], as a work made-for-hire for [Evolution], pursuant to [the Agreement]." Agreement, Ex. A. The language "all musical material" appears to apply on its face to the Theme. However, because the CoA was attached to the Agreement and expressly states that the work made-for-hire designation is "pursuant" to the Agreement, it may nonetheless be reasonably inferred that the CoA refers only the musical compositions contemplated by the Agreement, which the Court cannot find as a matter of law to include the Theme. Likewise, Section 3 of the Agreement includes the language, "to the extent that, for any reason, it should be determined that [the Score and Masters] are not works-made-for-hire, [Lazar] hereby irrevocably assigns to [Evolution] all such rights, including the copyright…" Agreement § 3. However, this provision also references the same materials discussed in the work-made-for-hire provision and is therefore vulnerable to the same possible inferences in favor of Lazar's interpretation of the contract.

It may be further noted that the Court has not been called on to decide whether the Theme was a work-made-for hire because it was prepared by an employee within the scope of the duties of his employment. *See* 17 U.S.C § 101. Regardless, such an analysis in this case would be fact-intensive and improper at the summary judgment stage. For the above reasons, the Court cannot find on summary judgment that the Theme was a work-made-for-hire, or that Lazar expressly assigned the copyright in the Theme to Evolution.

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | 2:24-cv-09748-SVW-KS | | Date | February 13, 2026 |
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | | |

> ii.   <u>There is no Dispute of Material Fact that Lazar at least Granted an Implied License to Evolution for the Theme</u>

Notwithstanding the factual dispute as to the applicability of the Composer Agreement to the Theme, discussed *supra*, Lazar's course of conduct unambiguously did create at least an *implied* license that allowed Evolution some use of the Theme.

Though exclusive licenses must be in writing, 17 U.S.C. § 204, grants of nonexclusive licenses need not be in writing, and may be granted orally or by implication. *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 754 (9th Cir. 2008) (citing *Foad Consulting Group, Inc. v. Azzalino,* 270 F.3d 821, 825–26 (9th Cir. 2001), *Effects Assocs., Inc. v. Cohen,* 908 F.2d 555, 558 (9th Cir.1990)). The Ninth Circuit has held that "an implied license is granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." *Id.* at 754-55 (internal quotations and footnote omitted). As for the third factor, the Ninth Circuit has clarified that it is not limited to copying and distribution, but rather that the intention of the implied licensor was to allow the implied licensee to exercise the protected right at issue. *Id*. (applying the test to the right to use, retain, and modify programs).

Here, it is not genuinely disputed that Evolution requested creation of the Theme. An email from an executive producer of RHOBH at Evolution, dated July 7, 2010, reads, "Alan, Glad to hear you are interested in taking a shot at the main theme. There are many variables, so let me explain some of the things we are looking for," and it proceeds to lay out in detail: the visual imagery that the Theme will accompany, the range of acceptable durations, the style, and the proposed tempo.  *See* ECF No. 29-8 at 107-108. In a line of inquiry about that email in Lazar's deposition, Lazar was asked whether it "was the first time [Lazar was] ***requested*** to compose [the Theme]." Lazar Depo. 42:5-7 (emphasis added). Lazar replied: "yes," before clarifying, "I think they may have contacted me by e-mail or phone before to ***request***, but this was the – I believe the first e-mail ***requesting*** that, yes." Id. at 42:10-12 (emphasis added).

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

It is also not genuinely disputed that Lazar made the Theme and delivered it to Evolution. The factual record contains confirmation of document transfers on September 23, 2010, through "YouSendIt," which Lazar confirmed contained the final Theme. ECF No. 29-9; Lazar Depo. at 46:16-51:2.

Finally, it is not genuinely disputed that Lazar's intention at the time of delivery was that Evolution would use the work as the title theme for RHOBH, to be copied and distributed by Bravo. Lazar Depo. at 51:17-21 (Lazar was asked, "your intention when you composed [the Theme] was that…[the Theme] would be used on [RHOBH]. Correct?" Lazar responded: "Yes, sir"); Id. at 44:19-45:4, 50:24-51:2 (Lazar unequivocally indicated that the work was intended to be used as a main title theme and represented that the notes of feedback he received were from both Evolution, the producer and, "of course…Bravo as well," demonstrating that Lazar understood the Theme would be copied and distributed not only by Evolution, but by Bravo as well); ECF No. 29-8 at 107 (an Executive Producer unequivocally explained to Lazar the planned use of the work as a title theme and outlined the creative "directives" coming from distributor Bravo, before Lazar had delivered even the first draft of the Theme).

Therefore, considering there is no genuine dispute of material fact that the test outlined in *Asset Marketing* is satisfied, the Court finds as a matter of law that a non-exclusive implied license existed, permitting Evolution to copy and distribute the Theme. Moreover, since (1) the requests for composition, including the ongoing feedback, were unequivocally originating from both Evolution *and* Bravo, (2) the unrefuted factual record indicates clear knowledge by Lazar that he was delivering the Theme to both Evolution and Bravo, and (3) Lazar indicated unambiguous intent for the Theme to be copied and distributed by Evolution and Bravo: the Court finds as a matter of law that a non-exclusive implied license existed, permitting Bravo to copy and distribute the Theme as well.

Lazar argues that, notwithstanding the existence of an implied license, Evolution's purported assignment of the copyright in the Theme to Bravo exceeded the scope of the implied license and thereby constituted an act of direct copyright infringement. Opp. at 19-21. The Court disagrees.

:

Initials of Preparer    DTA

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

Lazar's argument relies on an inapt application of the rule that a nonexclusive copyright licensee "has no right to re-sell or sub-license the rights acquired *unless he has been expressly authorized.*" Opp. at 19 (citing *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1333 (9th Cir. 1984) (emphasis added by Lazar). The contention is that because the implied license with Evolution did not include an express authorization allowing sub-licensing, any attempt to transfer rights in the Theme to Bravo would be an act of infringement. However, the *Harris* rule is inapplicable here. In *Harris*, plaintiff had written and composed several songs for an album to be released by a record company, in exchange for royalties. *Harris*, 734 F.2d at 1331. To simplify somewhat, the *Harris* defendants were essentially later entities that had acquired the masters to the songs in a bankruptcy sale, re-released a duplicate of the album, and failed to pay royalties to the plaintiff. *Id.* at 1332. The *Harris* court held that the defendant had not acquired the original record company's *licenses* along with the masters, because transferability was not explicitly contemplated in the licensing agreement between record company and plaintiff. *Id.* at 1335.

In *Harris*, the fact that the new use of the copyrighted works by defendants was *unanticipated* by the plaintiff at the time of the original licensing agreement was fundamental to the rule. *See id.* at 1334 (explaining as the central justification for the rule that allowing a licensee to sub-license without explicit authorization would jeopardize the copyright owner's ability to monitor the use of the work). Here, unlike in *Harris*, the alleged attempt to sub-license between Evolution and Bravo did *not* catalyze a new use of the work but rather facilitated the original use of the Theme that was contemplated by the implied license in the first place. As outlined, *supra*, the factual record in the case at bar leaves no room for genuine dispute that the purpose of the implied license that existed as a matter of law was to allow the distribution of the Theme, as part of the RHOBH series, by *both* Evolution *and* Bravo.

Furthermore, *Harris* certainly does not stand for the proposition that exceeding the scope of a license by improperly sub-licensing without authority from the licensor constitutes an act of direct copyright infringement by the *licensee*. This is necessarily true because the *Harris* defendants were *not* the original record company—the licensee. Instead, they were the later entities, who's improper act was *not* exceeding the scope of a license but rather improper *use* of the copyrighted work, through copying and distributing the work without a license and without paying royalties. In the imprecise analogy between

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

*Harris* and the case at bar, the infringing defendants would be comparable *not* to Defendant Evolution but to Bravo—albeit a version of Bravo that had not independently received an implied license to reproduce and distribute the copyrighted work in its own right.

Regarding liability under copyright law for a *licensee* that has exceeded the license's scope, the Ninth Circuit has held that, "[a] copyright owner who grants a nonexclusive, limited license ordinarily waives the right to sue licensees for copyright infringement, and it may sue only for breach of contract. However, if the licensee acts outside the scope of the license, the licensor may sue for copyright infringement. *MDY Indus., LLC v. Blizzard Ent., Inc.*, 629 F.3d 928, 939 (9th Cir. 2010), *as amended on denial of reh'g* (Feb. 17, 2011), *opinion amended and superseded on denial of reh'g,* No. 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (citations omitted). Specifically, "[t]o recover for copyright infringement based on breach of a license agreement, (1) the copying must exceed the scope of the defendant's license and (2) the copyright owner's complaint must be grounded in an exclusive right of copyright (e.g., unlawful reproduction or distribution). *Id.* at 940. In other words, for a licensee's violation of a contract to constitute copyright infringement, rather than breach of contract, there must be a "nexus between the condition and the licensor's exclusive rights of copyright." Id. at 941.

The "exclusive rights of copyright" are clearly defined by statute as the rights: (1) to reproduce copies and phonorecords of the work, (2) to prepare derivative works, (3) to distribute copies and phonorecords of the work to the public, (4) to perform the work publicly, and (5) to display the work publicly. 17 U.S.C. § 106. Licensing, or sub-licensing for that matter, is ultimately best characterized as an agreement not to sue for infringement; it does not transfer any interest whatsoever in a copyright; it is therefore not an 'exclusive right of copyright.' *See Harris*, 734 F.2d at 1334. Evolution cannot be held liable for copyright infringement because even if Evolution's alleged attempt to sub-license the Theme *did* exceed the scope of an implied license, the dispute would sound in breach of contract because it was not grounded in Lazar's exclusive right regarding *use* of the Theme.[1]

---

[1] The Court acknowledges that there may be factual circumstances under which an attempted sub-license may, in fact, share a nexus with exclusive rights. After all, the Ninth Circuit has interpreted through legislative history that the exclusive

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | | Date | February 13, 2026 |
|---|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

Accordingly, Plaintiff has not been able to identify any case law, binding on this Court or otherwise, wherein a defendant licensee was found liable for direct copyright infringement, when the allegedly infringing act was sub-licensing the copyrighted work beyond the scope of its authority as a licensee. Instead, Plaintiff attempts to analogize to a district court opinion, *UMG Recordings, Inc. v. BCD Music Grp., Inc.*, 2008 WL 11284864 (C.D. Cal. 2008). In *UMG*, plaintiff record company had given an implied license to disk jockeys ("DJ's") to play copyrighted work in clubs prior to public release, for purposes of promotion and gauging public response. *Id*. at 1. Some of the DJ's, however, arranged the copyrighted work into mixtapes, which were then distributed by the defendant distribution company. *Id.* The *UMG* court found that the DJ's had lacked the rights to transfer their nonexclusive licenses without express authorization, and the distribution company was therefore liable for infringement. *Id.* at 3.

*UMG* is not factually analogous to the case at bar because in *UMG*, the copyright holder had not granted the nonexclusive license to the licensee DJ's with the intention that the work be then distributed by the defendant. *Id.* ("[plaintiff record company] told most of the Mixtape DJs multiple times that selling mixtapes containing [plaintiff's] copyrighted music was illegal and that '[i]f you get caught, just know you'll get in trouble'"). This is distinguishable from the instant case, where Lazar composed the Theme for distribution by Bravo. Furthermore, in *UMG*, it was *not* the licensee who was liable for copyright infringement. The *UMG* defendant was the purported *transferee* of the implied license, which, in the inapt analogy, would be, again, not Evolution but Bravo.

In all, even taking every factual inference in favor of Lazar, there exists as a matter of law at least implied, nonexclusive licenses for the copy and distribution of the Theme in RHOBH by Evolution and Bravo. The Court finds that Evolution did not exceed the scope of this license by purporting to give up its

---

rights in a different context may also include the right "to authorize" the activities enumerated in the statute. *See Silvers v. Sony Pictures Ent., Inc.,* 402 F.3d 881, 887 (9th Cir. 2005). However, under these facts, where Bravo's use of the Theme would have already been implicitly "authorized" by Lazar himself, and Evolution's purported attempt to sublicense the Theme was merely a guarantee not to sue or independently exploit the Theme itself, there has been no infringement as a matter of law.

:

Initials of Preparer    DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | |

rights under this implied license through the PSA with Bravo. Moreover, even if Evolution *did* exceed the scope of the license, such a violation, though possibly a breach of contract, would not amount an act of direct copyright infringement. Accordingly, Lazar's copyright infringement claim against Evolution fails as a matter of law.[2]

### E. Plaintiff's Breach of Contract Claim

Lazar's second cause of action for breach of contract does not relate to the Theme but rather is based on Evolution's failure to pay mechanical royalties for the "one-off" Music Cues undisputedly contemplated in the Agreement. Opp. at 24-26.[3] Initially, the basis for Lazar's breach of contract claim was the assumption that significant foreign mechanical royalties had accrued and been paid to Evolution. *See* FAC ¶ 39. Considering that the Agreement dictated that Evolution would pay Lazar mechanical royalties to be calculated between Evolution and Lazar just as they were calculated between Bravo and Evolution, pursuant to the PSA, this would have constituted a clear breach of contract—provided, of course, that the Agreement was enforceable and Lazar had performed. Moreover, Lazar contended that

---

[2] It may be noted that Lazar also contends the implied license is void due to insufficient consideration or unconscionability. Opp. at 21-24. Both arguments may be dismissed with brief analysis. Notwithstanding the fact that the Court is generally not in the business of evaluating adequacy of consideration, consideration here only affects the *revocability* of the implied license, not its existence. *See Asset Marketing*, 542 F.3d at 757. Furthermore, Lazar argues that the $3,500 was consideration for use of the Theme in the first season, while all further use was uncompensated. Opp. at 22. This argument fails as a matter of law—Lazar has offered no evidence to support an inference that Lazar intended the use of the Theme to be limited to the first season. Finally, as for unconscionability, even if this court could find a genuine dispute as to whether $3,500 as a price for the Theme would "shock the conscience" and thereby be substantively unconscionable, *see Daneshmand v. City of San Juan Capistrano*, 60 Cal.App.5th 923, 934 (2021), Lazar has entered no evidence in the record that would permit an inference of procedural unconscionability. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 928 (2015) ("a showing of both procedural and substantive unconscionability is required to render a contract unenforceable").

[3] Lazar's claims for breach of contractual provisions, both express and implied, concern the Agreement as originally constituted and as amended for subsequent cycles of RHOBH, with the mechanical royalty provision staying substantively the same. The Court's analysis as to the Agreement applies to the subsequent amendments as well.

| | : |
|---|---|
| Initials of Preparer | DTA |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

Evolution's breach was material because the payment of mechanical royalties pursuant to the Agreement was a material term. SUF ¶ 74.

It is undisputed that the Agreement is an enforceable contract, and Lazar duly performed under it. SUF ¶ 94. However, Evolution has offered evidence revealing that Evolution's PSA with Bravo did not contain any term requiring Bravo to collect and pay over to Evolution foreign mechanical royalties. *See* PSA.[4] Lazar has not met his burden of countering this showing with evidence that introduces a genuine dispute that mechanical royalties were calculated and paid to Evolution by Bravo and therefore triggered Evolution's duty to pay mechanical royalties to Lazar.

The Court notes that Plaintiff was initially hindered in his ability to gain a comprehensive understanding of the exact earnings Evolution received from Bravo for RHOBH pursuant to the PSA. This is because Evolution failed in its discovery obligations by allowing its corporate designee, Alex Baskin, to appear at his deposition unprepared to testify as to the specifics of Evolution's earnings in connection with RHOBH under the PSA. *See* ECF No. 113 at 3-4 (Magistrate Judge Stevenson's order granting Plaintiff's motion to compel further Rule 30(b)(6) testimony). However, Defendant later rectified this issue by offering corporate designee Tony Barbagiovanni, who was properly prepared for his deposition. ECF No. 126. Moreover, though Baskin could not testify specifically as to *total* monies received by Evolution, he *did* testify with specificity that not a single dollar of mechanical royalties was ever collected by Evolution pursuant to the PSA. ECF No. 62-6 at 27:25-28:12, 82:25-83:4. The Barbagiovanni deposition did not introduce any doubt about that testimony. Therefore, the Court finds no genuine dispute of material fact as to the fact that mechanical royalties were not "calculated and paid" as between Bravo and Evolution pursuant to the PSA. By the plain language of the Agreement, Evolution thus had no

---

[4] Lazar contests this fact, pointing to the provision in the PSA that reads, "as between [Bravo] and [Evolution], [Bravo] shall be responsible for the payment of royalties and residuals with respect to [Bravo's] distribution and exploitation of [RHOBH] only to the extent that such amounts were previously approved in writing by [Bravo]. [Bravo] shall not be required to pay any royalties or residuals, except as expressly set forth in this paragraph." The Court does not find that this provision introduces a genuine dispute of material fact on the issue, because it does not indicate that Bravo had any obligation to collect or pay mechanical royalties to Evolution, or that any such royalties were ever collected and paid between Bravo and Evolution.

:

| Initials of Preparer | DTA |
|---|---|

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|

| Title | *Alan Lazar v. Amazon Studios, LLC et al* |
|---|---|

obligation to calculate and pay mechanical royalties to Lazar. There was therefore no breach of an express contractual term in the Agreement related to mechanical royalties as a matter of law.

Lazar argues, however, that Evolution's deceptive negotiation of the Agreement amounts to a breach of the implied covenant of good faith and fair dealing. Opp. at 24-26.

The Court acknowledges that Lazar has submitted and directed the Court to evidence that establishes at least a dispute of fact as to whether: (1) Evolution entered into the Agreement with Lazar, knowing that the receipt of mechanical royalties was a material term to Lazar, (2) Evolution knew during negotiation of the Agreement that the PSA between Evolution and Bravo would preclude receipt of mechanical royalties by Lazar, and (3) Evolution nonetheless drafted the Agreement to allow Lazar to expect that mechanical royalties might be forthcoming. *See* SUF ¶ 98; PSA (it is undisputed that Evolution entered into the PSA with Bravo prior to the agreement with Lazar, which would tend to prove that Evolution already knew during negotiations that no mechanical royalties would be payable to Lazar under the terms of the Agreement); *see also* Lazar Decl. ¶ 9; ECF No. 39 Ex. C at 30:17-23, 32:13-33:18 (Lazar's sworn declaration and the deposition of Evolution's corporate designee tend to prove that Lazar was not aware of the terms of the PSA when negotiating the Agreement with Evolution); *see also* Lazar Decl. ¶ 4 (Lazar's sworn declaration tends to prove that receiving a writer's share of mechanical royalties was a material term to Lazar when negotiating the Agreement, and Lazar communicated as much to Evolution).

However, even if Evolution did negotiate the Agreement in bad faith, knowing that Lazar had entered into the contract with a material misunderstanding as to his entitlement to mechanical royalties, such conduct would not amount to a breach of the covenant of good faith and fair dealing under established California contract law.

On this issue, *McClain v. Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 71 (2008), is instructive. In *McClain*, defendant owners of commercial real estate executed a written lease agreement with plaintiff tenants. Id. at 790. The agreement allegedly misrepresented the size of the subject property and used that inaccurate size to calculate expenses owed by plaintiffs—though the language of the lease referred to the

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | | Date | February 13, 2026 |
|---|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | | |

measurement as an "approximation" and provided that the lessee plaintiffs had accepted it as reasonable based on independent investigation. *Id*. Furthermore, the *McClain* defendants allegedly *knew* the representations as to property size were materially inaccurate during negotiations. Id. at 793. However, the *McClain* court—while overturning the trial court's decision to sustain a demurrer as to plaintiffs' misrepresentation claim—affirmed the trial court's dismissal of plaintiffs' claim of a breach of the covenant of good faith and fair dealing. *Id.* at 798-99 ("insofar as these allegations assert that Octagon violated the implied covenant during the negotiations of the lease, they fail to state a claim").

As the *McClain* court made clear, "the implied covenant is a supplement to an existing contract, and thus it does not require parties to negotiate in good faith prior to any agreement." *Id.* at 799 (citing *Racine & Laramie, Ltd. v. Department of Parks & Recreation*, 11 Cal.App.4th 1026, 1031-35 (1992)). In other words, "the implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation." *Racine*, 11 Cal.App.4th at 1031. The covenant of good faith exists to prevent parties from frustrating the other party's rights to benefit from the express covenants of a contract. Here, the Agreement between Lazar and Evolution contained no express covenants or promises that Evolution would collect any particular quantity of mechanical royalties for Lazar. Therefore, there has been no frustration of Lazar's ability to benefit from an express agreement.

Unlike the *McClain* plaintiffs, Lazar has brought no claim for material misrepresentation. Lazar does not argue that the Agreement is void ab initio or fraudulently induced but rather valid and breached. However, Lazar has proffered no evidence that introduces a genuine dispute of fact as to a breach of an express term in the Agreement, and the claim of breach of the covenant of good faith and fair dealing— which is based on the theory that Evolution made material misrepresentation during negotiations—fails as a matter of law.

:

Initials of Preparer   DTA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| Case No. | 2:24-cv-09748-SVW-KS | Date | February 13, 2026 |
|---|---|---|---|
| Title | *Alan Lazar v. Amazon Studios, LLC et al* | | |

### F. Plaintiff's Accounting Claim

Neither party disputes that Plaintiff's accounting claim hinges on the validity of the underlying copyright infringement and breach of contract claims. *See* Mot. at 14-15; Opp. at 26. Given that the Court has found that both claims fail as a matter of law, the accounting claim necessarily fails as well.

### V.   Conclusion

For the foregoing reasons, Evolution's motion is GRANTED. Summary Judgment is hereby GRANTED in favor of Defendant as to each of Plaintiff's claims.

**IT IS SO ORDERED.**

:

Initials of Preparer    DTA