JENNER & BLOCK LLP
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
2029 Century Park East, Suite 1450
Los Angeles, CA 90067-2901
Telephone: +1 213 239 6900
Facsimile: +1 213-239-5199

JENNER & BLOCK LLP
Sarah S. Lee (SBN 311480)
SLee@jenner.com
Eric W. Wolff (SBN 341180)
Eric.Wolff@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

Attorneys for Defendant
EFT Media Productions LLC d/b/a
Evolution Media

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION – LOS ANGELES

| | |
|---|---|
| ALAN LAZAR, an individual,<br><br>                              Plaintiff,<br><br>        v.<br><br>AMAZON STUDIOS LLC, et al.,<br><br>                              Defendants. | Case No. 2:24-cv-09748-SVW-KS<br><br>**DEFENDANT EFT MEDIA PRODUCTIONS LLC'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS & AUTHORITIES**<br><br>Judge: The Honorable Stephen V. Wilson<br>Ctrm: 10A, 10th Floor<br>Date: June 8, 2026<br>Time: 1:30 p.m.<br><br>Action Filed: November 12, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on June 8, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Stephen V. Wilson, in Courtroom 10A in the First Street U.S. Courthouse, 350 West First Street, 10th Floor, Los Angeles California 90012, Defendant EFT Media Productions LLC d/b/a Evolution Media ("Defendant" or "Evolution"), through its attorneys of record, respectfully will, and hereby does, move pursuant to Federal Rule of Civil Procedure 54(d) and 17 U.S.C. § 505 for an order awarding it reasonable attorney's fees in the total amount of **$1,401,782.10** against Plaintiff Alan Lazar.

Evolution is entitled to an award of attorney's fees because the Court granted summary judgment in favor of Evolution on Mr. Lazar's copyright claim, as well as on his related contract and accounting claims. An award of attorney's fees is proper because Mr. Lazar's copyright claim was objectively unreasonable both legally and factually, Evolution prevailed on all claims asserted, and a fee award would serve the ultimate purpose of the Copyright Act to promote public access to creative works while deterring and preventing plaintiffs from bringing unreasonable copyright lawsuits that seek to restrict such access, as Mr. Lazar did here. Evolution also may recover attorney's fees for its successful defense against Mr. Lazar's contract and accounting claims because those claims are related to his copyright claim.

Evolution is seeking attorney's fees based on discounted hourly rates that are in line with or below the prevailing market rates charged by attorneys and firms practicing in this district with a similar level of experience and expertise. The fee amount is reasonable given the time Evolution's counsel spent reviewing and analyzing the complaint, reviewing and analyzing the works at issue, responding to the complaint, conducting written discovery, propounding a third-party subpoena, taking depositions of Mr. Lazar and his expert witness, defending depositions of Evolution's witnesses, attempting to negotiate and settle this case including through

mediation, litigating a successful motion for summary judgment, and preparing for a jury trial, which was just eleven days away when summary judgment was granted.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place by teleconference on March 26, 2026.

This Motion is based upon this Notice of Motion and Motion as well as the Memorandum of Points and Authorities, the Declaration of Andrew J. Thomas with Exhibits A and B filed concurrently herewith; all of the records in this case; and such further evidence or argument that may be allowed by the Court at or before the hearing on this Motion.

Dated: May 4, 2026                    JENNER & BLOCK LLP


                                      By: */s/ Andrew J. Thomas*
                                      Andrew J. Thomas
                                      Sarah S. Lee
                                      Eric W. Wolff

                                      Attorneys for Defendant
                                      EFT Media Productions LLC d/b/a
                                      Evolution Media

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

II. FACTUAL AND PROCEDURAL BACKGROUND ................................ 3

    A.  Mr. Lazar Composed the RHOBH Theme in 2010 .......................... 3

    B.  Mr. Lazar Belatedly Filed a Federal Copyright Complaint ............... 4

    C.  Evolution Engaged in Highly Accelerated Discovery ...................... 5

    D.  Evolution Moved for Summary Judgment. ..................................... 6

    E.  Evolution Prepared Extensively for a Jury Trial. ............................ 7

    F.  Evolution Prevailed Completely on Summary Judgment. ................. 7

III. EVOLUTION IS ENTITLED TO RECOVER ITS
    REASONABLE ATTORNEY'S FEES ................................................. 9

    A.  The Copyright Act Authorizes an Award of Attorney's Fees
        to Evolution as the Prevailing Party ............................................. 9

    B.  Mr. Lazar's Copyright Claim Was Objectively
        Unreasonable. ........................................................................ 10

    C.  Evolution Was Completely Successful in Its Defense. ................... 11

    D.  Awarding Fees to Evolution Would Promote the Purposes of
        the Copyright Act and Deter Unreasonable Copyright Suits
        Seeking to Restrict Public Access to Creative Works. ................... 11

    E.  The Court Should Award Evolution Fees for Defending
        Against Mr. Lazar's Related Contract and Accounting
        Claims. ................................................................................. 13

IV. EVOLUTION'S ATTORNEY'S FEES ARE REASONABLE ................ 14

    A.  Evolution's Counsel Charged Reasonable Rates .......................... 14

    B.  The Number of Hours Expended Was Reasonable ........................ 17

V.  CONCLUSION ............................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asset Mktg. Sys., Inc. v. Gagnon*,
542 F.3d 748 (9th Cir. 2008)................................................................. 10

*Blum v. Stenson*,
465 U.S. 886 (1984) .................................................................. 14, 15

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008)................................................................. 14

*Cobbler Nevada, LLC v. Gonzales*,
901 F.3d 1142 (9th Cir. 2018)................................................................. 9

*DuckHole Inc. v. NBCUniversal Media LLC*,
2013 WL 5797204 (C.D. Cal. Oct. 25, 2013) .............................................. 11

*Fantasy, Inc. v. Fogerty*,
94 F.3d 553 (9th Cir. 1996) ................................................................. 11

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517 (1994) ............................................................................. 9

*Glacier Films (USA), Inc. v. Turchin*,
896 F.3d 1033 (9th Cir. 2018)................................................................. 9

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
925 F.3d 1140 (9th Cir. 2019)................................................................. 10

*Hope Medical Enters., Inc. v. Fagron Compounding Servs., LLC*,
2022 WL 826903 (C.D. Cal. Mar. 14, 2022) .............................................. 15

*Kirtsaeng v. John Wiley & Sons, Inc.*,
579 U.S. 197 (2016) ....................................................... 9, 10, 11, 12

*Kolton v. Universal Studios, Inc.*,
2004 WL3242338 (C.D. Cal. Dec. 14, 2004) .............................................. 10

ii

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
  81 F.3d 881 (9th Cir. 1996) ....................................................................... 11

*Mattel, Inc. v. MGA Ent., Inc.*,
  2011 WL 3420603 (C.D. Cal. Aug. 4, 2011) .............................................. 13

*N.T.A.A. v. Nordstrom, Inc.*,
  2024 WL 1723524 (C.D. Cal. Apr. 19, 2024) ............................................. 18

*Netlist Inc. v. Samsung Electronics Co., Ltd.*,
  341 F.R.D. 650 (C.D. Cal. June 13, 2022) ................................................. 16

*OWLink Technology, Inc. v. Cypress Technology Co., Ltd.*,
  2023 WL 9061081 (C.D. Cal. Dec. 12, 2023) ....................................... 16, 18

*Perdue v. Kenny A. ex rel. Winn*,
  559 U.S. 542 (2010) ................................................................................... 14

*Perfect 10, Inc. v. Giganews, Inc.*,
  2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ............................................ 18

*PLCM Group v. Drexler*,
  22 Cal. 4th 1084 (2000) ............................................................................. 14

*Shame On You Productions, Inc. v. Banks*,
  893 F.3d 661 (9th Cir. 2018) ..................................................................... 13

*Thomas v. City of Tacoma*,
  410 F.3d 644 (9th Cir. 2005) ..................................................................... 13

*Williams v. Berryhill*,
  2018 WL 6333695 (C.D. Cal. Nov. 13, 2018) ........................................... 16

**Other Authorities**

Fed. R. Civ. P. 54(d)(2)(B)(i) .......................................................................... 8

## I.    INTRODUCTION

This Court should award Defendant EFT Media Productions LLC d/b/a Evolution Media ("Evolution") the reasonable attorney's fees it incurred and paid in successfully defending against Plaintiff Alan Lazar's unmeritorious copyright infringement claim and his related unsuccessful contract and accounting claims. Mr. Lazar asserted that he owned the copyright to the main title theme (the "Theme") for the *Real Housewives of Beverly Hills* television show ("RHOBH") and sought, among other things, an injunction to prevent its further use on the show. Had Mr. Lazar obtained the relief he requested, television audiences in the United States and around the world no longer would have been able to enjoy the Theme to RHOBH, the sole purpose for which it was created.

Mr. Lazar's copyright claim was objectively unreasonable. He signed an agreement in 2010 stating that "all musical material[s]" that he submitted for RHOBH were works made for hire to which Evolution owned the copyright. In almost every year for over a decade, Mr. Lazar repeatedly re-certified in writing that each and every composition he submitted in connection with RHOBH was a work made for hire. While the Court found there was a triable issue of fact regarding the work-for-hire clause in the agreement, there was no dispute that prior to October 2024 Mr. Lazar never once claimed that he owned the Theme and at all times acted in a manner entirely consistent with an understanding that Evolution or Bravo owned all rights in the Theme. As this Court concluded, Mr. Lazar, at a minimum, indisputably granted Evolution an implied license to use the Theme when he created and submitted it at Evolution's request and was paid $3,500, in addition to receiving substantial public performance royalties arising from the use of the Theme and other music he composed for the show.

After Mr. Lazar filed his lawsuit, Evolution fought to vindicate its lawful use and allow audiences to continue to enjoy the Theme on RHOBH. In doing so, Evolution served the ultimate purpose of the Copyright Act: to promote access to

1

creative works.  Section 505 of the Copyright Act aims to encourage parties like Evolution to defend their rights by allowing the prevailing party in a copyright action to recover its reasonable attorney's fees.  Awarding attorney's fees to Evolution will promote the Copyright Act's goals by deterring Mr. Lazar and other composers from filing unmeritorious copyright claims regarding works they plainly intended for the defendant to use in a film or television production.  Such claims threaten to restrict public access to these musical compositions by preventing them from being distributed in the films and television shows for which they were created.  An award also would encourage more production companies and television distributors to defend against spurious claims, rather than giving in to unjustified demands and replacing the music at issue, which similarly would restrict public access to the copyrighted works.

Evolution is entitled to recover its attorney's fees under Section 505 because it successfully defended against Mr. Lazar's claims, because Mr. Lazar's claims were objectively unreasonable, and because an award would serve the purposes of the Copyright Act as described in the preceding paragraph.  Evolution also is entitled to attorney's fees for defending against Mr. Lazar's breach of contract and accounting claims because they arise from the same agreements and circumstances and are inextricably related to the copyright claim.

The fees Evolution is seeking are reasonable.  The rates and time spent are comparable to or below prevailing market rates for attorneys with a similar level of experience and expertise as Evolution's counsel with sophisticated copyright litigation matters.  Evolution's request is also reasonable because Evolution has exercised its judgment to exclude fees for certain tasks, such as the significant time Evolution's attorneys spent on sealing Evolution's confidential documents and testimony in public filings and all of the time counsel spent on this matter after the Court granted summary judgment in October 2025, including fees incurred in connection with this fees motion.

The Court therefore should award Evolution the full amount of attorney's fees it is requesting: $1,401,782.10.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Mr. Lazar Composed the RHOBH Theme in 2010.

When Mr. Lazar began writing music for RHOBH's first season in 2010, he signed a composer agreement (the "2010 Agreement"). *See* Evolution's Mem. of Points and Auths. in Supp. of Mot. for Summ. J. at 3–4, ECF No. 29-1 ("MSJ"). Multiple provisions of the 2010 Agreement state that all of the musical compositions Mr. Lazar created for RHOBH were works made for hire to which Evolution owned the copyright. *Id.* In Section 3 of the 2010 Agreement, titled "Copyright," Mr. Lazar "acknowleg[ed]" that his compositions "shall be deemed to be 'works made for hire' for [Evolution] with [Evolution] being the exclusive owner of all rights of every kind and nature" including "the worldwide copyright in perpetuity." MSJ at 4. The 2010 Agreement also attached a certificate of authorship signed by Mr. Lazar confirming that he "composed all musical material submitted by me in connection with [RHOBH] as a work made for hire for [Evolution]." *Id.* On September 23, 2010, Mr. Lazar submitted the final draft of the Theme, and Evolution later paid him $3,500 for the Theme. MSJ at 5.

The 2010 Agreement also addressed mechanical royalties. MSJ at 5. It provided that mechanical royalties should be "calculated and paid in the same manner as mechanical royalties are calculated and paid" to Evolution by any distributor(s) of RHOBH. *Id.* Mr. Lazar did not receive any mechanical royalties for his work on RHOBH, and it was undisputed that Evolution never received any mechanical royalties from Bravo, the distributor of RHOBH. *See* Order Granting Defendant's Motion for Summary Judgment, ECF No. 127 ("SJ Order") at 14–15.

For twelve years, Mr. Lazar continued composing music for subsequent seasons of RHOBH and collected over a million dollars in public performance royalties. MSJ at 6–7. Almost every year, he signed an amendment to the 2010

Agreement in connection with his work on each new season of RHOBH. *Id.* Those amendments, executed well after he had composed the Theme for use in the show, contained the same certificate of authorship that he signed in 2010, confirming that "all musical material[s]" he submitted for RHOBH would be works made for hire for Evolution. *Id.* He did not raise any issues concerning mechanical royalties or his ownership of the Theme for more than a decade, even though he was a sophisticated party with many years of prior experience as a composer for television and was represented by counsel and an experienced agent. *Id.* Notably, there was no dispute that, prior to October 2024, Mr. Lazar never once claimed that he owned the copyright in the Theme and at all times acted in a manner entirely consistent with an understanding that Evolution or Bravo owned all rights in the Theme.

**B.    Mr. Lazar Belatedly Filed a Federal Copyright Complaint.**

On January 29, 2024, Mr. Lazar's litigation counsel sent Evolution a demand letter threatening to bring copyright and breach of contract claims relating to music that Mr. Lazar wrote for the RHOBH series. Decl. of Andrew J. Thomas ("Thomas Decl.") ¶ 6. Shortly thereafter, Evolution engaged outside litigation counsel at the law firm of Jenner & Block. *Id.* Jenner and counsel for Mr. Lazar negotiated in good faith in an effort to reach a settlement through July 2024. *Id.* After months of discussions, however, Mr. Lazar's counsel fell silent. *Id.* After approximately four months of silence, and without further communication, Mr. Lazar filed his initial complaint in this action. *Id.* at ¶ 7; ECF No. 1. Soon thereafter, the parties engaged in a mediation in March 2025 with retired United States District Judge Gary A. Feess. Thomas Decl. ¶ 8. Evolution paid in full all of the mediator costs and fees, a total of $25,000. *Id.* When the mediation failed to produce a settlement, Evolution answered Mr. Lazar's complaint and began discovery shortly thereafter. *Id.*; Answer, ECF No. 20.

## C. **Evolution Engaged in Highly Accelerated Discovery.**

On June 2, 2025, the Court held a status conference and set a pretrial conference for October 6, 2025, and a jury trial for October 14, 2025. ECF No. 23. Evolution expended significant resources over the following months on discovery, motion practice, and trial preparations.

Discovery in this matter required significant time and effort. Evolution propounded interrogatories and requests for production on Mr. Lazar and reviewed more than 10,000 pages of documents that Mr. Lazar produced in response—almost all of them within the last two weeks of the agreed-upon fact discovery period. Thomas Decl. ¶ 10. The time required to review Mr. Lazar's production was significant, as many of the documents were produced in an unintelligible format such that hundreds of pages consisted of a single column of individual characters. *Id.* Mr. Lazar propounded thirty requests for production on Evolution. *Id.* In response, attorneys at Jenner, assisted by Evolution's in-house counsel, reviewed over 30,000 documents from seven custodians, and produced 1,530 documents comprising 2,904 pages. *Id.* Additionally, Evolution subpoenaed and obtained documents from Mr. Lazar's long-time talent agent, Randy Gerston. *Id.*

Evolution also engaged a television industry expert, Marc Graboff, to provide testimony calling into question Mr. Lazar's damages theories for his copyright and royalty claims. Thomas Decl. ¶ 11. Specifically, Mr. Graboff opined that foreign mechanical royalties ordinarily do not play a role in negotiations of production services agreements for unscripted television series and there is no reason to expect that such royalties played any role in the negotiations of the agreement for RHOBH. *See id.*. Jenner repeatedly conferred with Mr. Graboff about his expert witness report, which was served on Mr. Lazar on July 25, 2025. *Id.*

In August 2025, Evolution deposed Mr. Lazar and his putative expert witness Johnathan Clifford—who testified that he relied on ChatGPT to compose large parts of his expert report, underscoring the baselessness of Mr. Lazar's claims. *See* ECF

No. 104-2 at 37:3–19, 37:22–38:24, 49:18–23. Evolution's counsel also prepared witnesses and defended the depositions of Evolution's Rule 30(b)(6) representative Alex Baskin (who testified on five topics) and its employee Paul Trombetta. Thomas Decl. ¶ 12. When Mr. Lazar moved to compel additional Rule 30(b)(6) deposition testimony on one topic, Evolution appeared at a discovery conference before Magistrate Judge Karen Stevenson and filed a letter brief opposing Mr. Lazar's motion. *Id.* Pursuant to this Court's order of January 21, 2026, Evolution's counsel also identified a second Rule 30(b)(6) designee witness, Tony Barbagiovanni, and prepared him to testify on one of the Rule 30(b)(6) topics. *Id.* Mr. Barbagiovanni's deposition took place on January 29, 2026. *Id.* Evolution incurred significant fees and costs in connection with this deposition, but it is not seeking to recover any fees or costs for this work. *Id.*

## D.     Evolution Moved for Summary Judgment.

Shortly after fact depositions were completed, Evolution moved for summary judgment on August 22, 2025. ECF No. 29. Evolution filed its summary judgment motion less than three months after the Court held its initial status conference, in light of the upcoming October 14, 2025 trial date. Evolution worked diligently to prepare its summary judgment motion on a compressed schedule over these three months, which was even more compacted because both Mr. Lazar and his lead counsel were out of the country and unavailable for most of July 2025.[1] Thomas Decl. ¶ 13.

Evolution moved for summary judgment on all three of Mr. Lazar's claims, including his copyright infringement claim. *See* ECF No. 29. Because the summary judgment motion and Mr. Lazar's opposition implicated a confidential agreement between Evolution and Bravo, the distributor of RHOBH, Evolution's counsel spent

---

[1] The scheduling order established a highly accelerated schedule with trial set for October 14, 2025, and pretrial conference on October 6, 2025. *See* ECF No. 24 at 1. The Court did not designate a discovery cutoff date. *Id.* The parties stipulated to an August 15 cutoff date for fact discovery. *See* Thomas Decl. ¶ 9.

6

significant time conferring with counsel for non-party Bravo, the counterparty to the distribution agreement, and addressing sealing issues related to the briefing. Thomas Decl. ¶ 14. Evolution is excluding from its fee motion request the attorney's fees associated with these multiple sealing efforts, which represent approximately $38,575 in fees and costs. *Id.* These expenditures included substantial time spent addressing plaintiff's counsel's inadvertent public filing of Evolution's confidential materials on August 29, 2025, including unredacted portions of a sealed Production Services Agreement and confidential declarations. *See id.* ¶¶ 3, 14.

The Court held a hearing on Evolution's motion for summary judgment on September 29, 2025, and took the motion under submission. *See* ECF No. 106.

## E. Evolution Prepared Extensively for a Jury Trial.

In the weeks before and days after the hearing, Evolution engaged in significant trial preparation in light of the compressed pre-trial deadlines. Evolution filed a joint exhibit list and witness list on September 15, 2025. *See* ECF Nos. 87, 90. Evolution also filed its memorandum of contentions of fact and law that same day. *See* ECF No. 91. On September 24, 2025, Evolution filed five motions in limine. *See* ECF Nos. 99, 100, 101, 102, 103. In the days following the summary judgment hearing, Evolution prepared and filed its verdict form and jury instructions, after conferring with Mr. Lazar's counsel regarding these pre-trial documents. *See* Thomas Decl. ¶ 15; *see also* ECF Nos. 114, 117, 118. Also in this same time period, Evolution prepared direct and cross examination outlines, opening and closing statements, and trial graphics and demonstratives. Thomas Decl. ¶ 15. Evolution also prepared for the pre-trial conference and motion-in-limine hearing, which was scheduled for October 6, 2025. *Id.*

## F. Evolution Prevailed Completely on Summary Judgment.

Three days before the pre-trial conference and eleven days before trial, the Court granted Evolution's summary judgment motion. On October 3, 2025, this Court entered a text-only "Order and Scheduling Notice" on the docket granting

7

Evolution's motion for summary judgment and indicating an order was "to be issued." ECF No. 119. The same docket entry also vacated the trial date, the pretrial conference, and the hearing on the five pending motions in limine. *Id.*

On February 13, 2026, the Court issued its written order granting summary judgment in favor of Evolution on all three of Mr. Lazar's claims: his copyright claim and his related claims for breach of contract and accounting.[2] *See* SJ Order.

On the copyright infringement claim, the Court found there was no genuine dispute of material fact that Mr. Lazar had granted Evolution and Bravo an implied license to copy and distribute the Theme in RHOBH. SJ Order at 9–10. The Court held that Mr. Lazar's own deposition testimony established each element of the implied license test. *Id.* First, Mr. Lazar himself characterized the outreach from Evolution to Mr. Lazar as a "request" to make the Theme. *Id.* at 9. Second, Mr. Lazar stated that he delivered a file containing the musical work through YouSendIt. *Id.* at 10. Third, Mr. Lazar admitted that his "intention" when composing the Theme was for it to be used on RHOBH and "unequivocally indicated" that he understood it would be used as a main title theme. *Id.* at 10. The Court further rejected Mr. Lazar's arguments that Evolution exceeded the scope of the implied license and that the implied license was void for lack of consideration or unconscionability. *Id.* at 10–14.

On the breach of contract claim, the Court found there was no genuine dispute of fact that mechanical royalties were never calculated or paid between Bravo and Evolution under the Production Services Agreement. *Id.* at 14–15. Therefore, under the terms of the 2010 Agreement, Evolution had no obligation to pay mechanical royalties to Mr. Lazar and Evolution therefore did not breach the 2010 Agreement. *Id.* at 15–16. The Court also held that Mr. Lazar's claim for breach of the implied

---

[2] A claim for attorney's fees must be filed no later than 14 days after the entry of judgment. Fed. R. Civ. P. 54(d)(2)(B)(i). Here, the Court entered a text-only docket entry on October 3, 2025 (ECF No. 119) and the order granting summary judgment on February 13, 2026. A separate judgment has not yet been entered.

covenant of good faith and fair dealing failed as a matter of law because that covenant does not impose an obligation to negotiate in good faith prior to entering a contract. *Id.* at 16–18.

Finally, the Court dismissed the accounting claim because it was dependent on the copyright and contract claims, both of which failed. *Id.* at 18.

### III.   EVOLUTION IS ENTITLED TO RECOVER ITS REASONABLE ATTORNEY'S FEES

**A.   <u>The Copyright Act Authorizes an Award of Attorney's Fees to Evolution as the Prevailing Party.</u>**

Evolution should be awarded its reasonable attorney's fees as the prevailing party in this copyright infringement suit under Section 505 of the Copyright Act. *See* 17 U.S.C. § 505. The Court "enjoys 'wide latitude to award attorney's fees based on the totality of circumstances in a case.'" *E.g.*, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1149 (9th Cir. 2018) (citing *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)). The Court must view these circumstances "in light of the Copyright Act's essential goals," particularly the goal of promoting access to creative works. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 204, 209 (2016).

To guide its decision, the Court may consider any of the following non-exclusive factors: "[1] frivolousness, [2] motivation, [3] objective unreasonableness (both in the factual and in the legal components of the case), and [4] the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has added other factors that "may be considered" and "need not all be met." *Glacier Films,* 896 F.3d at 1037–38. These include "[5] the degree of success obtained, [6] the purposes of the Copyright Act, and [7] whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *Id.* District courts "do not necessarily need to analyze all of

9

the factors set out in the cases, as those factors are discretionary and non-exclusive." *Id.* at 1042–43.

## B.    Mr. Lazar's Copyright Claim Was Objectively Unreasonable.

Evolution should be awarded its attorney's fees because Mr. Lazar's copyright claim was objectively unreasonable.  Objective unreasonableness is the most important factor in the fee analysis, and it must be given "substantial weight." *Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1149 (9th Cir. 2019) (quoting *Kirtsaeng*, 579 U.S. at 210).[3]

Here, Mr. Lazar's copyright infringement claim against Evolution was legally and factually unreasonable because—as the Court concluded in its Summary Judgment Order—Mr. Lazar, at a minimum, unequivocally had granted an implied license in 2010 for Evolution and Bravo to use the Theme in multiple seasons of RHOBH.[4]  *See* SJ Order at 9–10.  This license was created by Mr. Lazar's act of creating and delivering the Theme for use in RHOBH at Evolution's request, in exchange for consideration of $3,500.  *See Kolton v. Universal Studios, Inc.*, 2004 WL 3242338, at *3 (C.D. Cal. Dec. 14, 2004).  Mr. Lazar had direct knowledge of the circumstances surrounding the Theme's creation, submission, and continued use for over a decade, and he admitted it was his "intention" for the Theme to be used in RHOBH when he composed it.  *See* SJ Order at 10.  In this factual and legal context, it was clearly unreasonable to seek an injunction that would have prevented the Theme from being used in RHOBH—especially after Mr. Lazar had sat mute for over a decade without ever saying a word to the effect that he owned the copyright in the Theme or that Evolution or Bravo did not have permission to use it in the show.

---

[3] However, "a court may award fees even though the losing party offered reasonable arguments." *Kirtsaeng*, 579 U.S. at 208–09.

[4] Because Evolution provided consideration to Mr. Lazar in the form of a $3,500 fee for creating the Theme, the implied license as a matter of law was irrevocable. *See Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 757 (9th Cir. 2008).

## C.  **Evolution Was Completely Successful in Its Defense.**

Evolution's success in its defense weighs in favor of a fee award.  A grant of summary judgment in favor of a copyright defendant constitutes "total success in defending against [a] copyright claim[]."  *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996).  Evolution won summary judgment not only on Mr. Lazar's copyright claim, but also on his other two related claims for breach of contract and accounting, ending the action entirely.  *See* SJ Order at 18.  Because Evolution won summary judgment on the merits of Mr. Lazar's copyright infringement claim, the success factor weighs even more heavily in favor of a fee award.  *See DuckHole Inc. v. NBCUniversal Media LLC*, 2013 WL 5797204, at *2 (C.D. Cal. Oct. 25, 2013) (holding that the degree of success factor "weighs more in favor of a party who prevailed on the merits, rather than on a technical defense"); *accord Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 559–60 (9th Cir. 1996).

## D.  **Awarding Fees to Evolution Would Promote the Purposes of the Copyright Act and Deter Unreasonable Copyright Suits Seeking to Restrict Public Access to Creative Works.**

An attorney's fees award is particularly appropriate here because Mr. Lazar used his unreasonable copyright claim to seek an injunction that would have restricted the public's access to the Theme, which Mr. Lazar himself has described in his complaint and court submissions as "iconic," "pivotal and easily recognizable" and a "fundamental component of the RHOBH Series."  First Am. Compl. ("FAC") ¶¶ 2, 4, ECF No. 16; Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s MSJ Opp'n") at 7, ECF No. 37.  "[C]opyright law ultimately serves the purpose of enriching the general public through access to creative works."  *Kirtsaeng*, 579 U.S. at 204.  Mr. Lazar's lawsuit explicitly sought to permanently remove the Theme from RHOBH and from the public's enjoyment.  The complaint's prayer for relief began with a request for:

[P]reliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, online store platform and/or host providers, registrars and anyone acting on behalf of, or in concert with Defendants, from in any way exploiting the Title Theme Copyrights.

FAC at 11. The broad injunction Mr. Lazar sought necessarily would have extended not only to Evolution but also to RHOBH's distributor, Bravo. If this relief had been granted, the Theme would have been removed from all future episodes of RHOBH. This outcome would have been sharply contrary to the Copyright Act's goals of fostering access to creative works, given that the Theme was created for the sole purpose of serving as a main title theme for RHOBH and entertaining the audience of that show. *See Kirtsaeng*, 579 U.S. at 204. It is difficult to imagine the Theme reaching the public if it were not included in RHOBH. In this way, Mr. Lazar sought to use his copyright claim to remove the Theme from the airwaves and from an audience of millions across the United States and around the world. That is diametrically opposed to the Copyright Act's fundamental purpose of promoting access to creative works.

Awarding attorney's fees to Evolution also will serve the Copyright Act's policies of compensation and deterrence. Evolution should be compensated for the expenses it incurred to vindicate its own rights and to preserve the public's access to the Theme by fighting Mr. Lazar's suit. *See Kirtsaeng*, 579 U.S. at 205 (holding that copyright fee awards are intended to give "a person defending against a patently meritless copyright claim . . . every incentive to keep fighting"). Mr. Lazar, on the other hand, and composers similarly situated, should be deterred from bringing meritless copyright claims concerning the use of music in other television shows where such works were clearly made as works for hire or otherwise covered by a license. A fee award here would also help deter other film and television composers from using meritless copyright claims coupled with threats of injunctions in an attempt to hold those productions hostage. Such actions threaten to restrict public

12

access to music featured in films and television programs by encouraging production companies to cave to plaintiffs' unmeritorious demands in order to avoid litigation.

### E.   The Court Should Award Evolution Fees for Defending Against Mr. Lazar's Related Contract and Accounting Claims.

Evolution is also entitled to recover attorney's fees incurred to defend against Mr. Lazar's breach of contract and accounting claims because those claims are factually and legally related to his copyright claim. *See Shame On You Productions, Inc. v. Banks*, 893 F.3d 661, 669 (9th Cir. 2018); *see also Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420603, at *8 (C.D. Cal. Aug. 4, 2011) (awarding defendant "reasonable attorneys' fees it incurred in defending against the copyright claim and all related claims"), *aff'd sub nom. Mattel, Inc. v. MGA Ent., Inc.*, 705 F.3d 1108 (9th Cir. 2013).  Claims are related if they "involve a common core of facts or are based on related legal theories." *Shame On You Productions*, 893 F.3d at 669 (quoting *Thomas v. City of Tacoma*, 410 F.3d 644, 649 (9th Cir. 2005)).

All three of Mr. Lazar's claims involved a common core of facts and legal theories, as shown by Mr. Lazar's own filings.  Mr. Lazar's accounting claim is both factually and legally related to his copyright claim.   Mr. Lazar asserted that his alleged ownership of the copyright in the Theme was a key fact supporting the first element of his accounting claim.  *See* Pl.'s Mem. of Contentions of Fact and Law ("Pl.'s Contentions") at 6, ECF No. 89. Mr. Lazar admitted that his accounting claim "hing[ed] on the validity of the underlying claims," namely "the merits of Mr. Lazar's copyright and contract claims." Pl's MSJ Opp'n at 26.  In its Summary Judgment Order, the Court concluded that Mr. Lazar's accounting claim "necessarily fail[ed]" because his other two claims failed.  *See* SJ Order at 18.

Mr. Lazar's breach of contract claim likewise was factually related to his copyright claim because both claims hinged on the language of the 2010 Agreement and Mr. Lazar's subsequent RHOBH agreements. Additionally, the royalty revenue, or lack thereof, generated by the Theme was a fact that Mr. Lazar used to support

both his contract and copyright claims. Mr. Lazar's contract claim concerned the fact that Evolution did not pay foreign mechanical royalties for music he composed for RHOBH, which Mr. Lazar claimed were due to him under the 2010 Agreement. *E.g.*, FAC ¶ 40; Pl.'s Contentions at 4–6. These same mechanical royalties were part of the damages Mr. Lazar sought for his copyright claim. Mr. Lazar alleged that his damages included "all profits earned by Defendants from their exploitation of the Title Theme," which would necessarily include royalties generated by the Theme, if any. FAC at 12. Additionally, Mr. Lazar attempted to escape the implied license he granted in the Theme by claiming it was unconscionable because the profits the Theme generated were far greater than the payment he received. *See* Pl.'s MSJ Opp'n at 23–24. Thus, the amount of royalties the Theme generated, if any, was a factual issue central to both Mr. Lazar's copyright and contract claims.

Because Mr. Lazar's accounting and contract claims are legally and factually related to his copyright claim, Evolution should be awarded attorney's fees for defending against all three interrelated claims.

## IV.    EVOLUTION'S ATTORNEY'S FEES ARE REASONABLE

Courts use the lodestar method in assessing the reasonableness of attorney's fees. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). Evolution's attorney's fees calculation and support for the reasonableness of its rates and total fees are summarized below and detailed in the Declaration of Andrew J. Thomas, paragraphs 17 through 37 and Exhibit A.

## A.    Evolution's Counsel Charged Reasonable Rates.

Courts assess the reasonableness of attorney's fees by looking to the prevailing market rates in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984); *see also PLCM Group v. Drexler*, 22 Cal. 4th 1084, 1095 (2000).

The prevailing market rate is not determined by looking to a particular subject matter area. *Hope Medical Enters., Inc. v. Fagron Compounding Servs., LLC*, 2022 WL 826903, at *2 (C.D. Cal. Mar. 14, 2022). Thus, the Court may consider attorney's fees awards in any and all types of cases when determining the prevailing rate. *See id.* The Court must also consider the "skill, experience, and reputation" of the attorney requesting fees. *Blum*, 465 U.S. at 895 n.11.

Jenner & Block is nationally renowned for its active federal court copyright litigation practice. Thomas Decl. ¶ 21. The primary attorneys on this matter are based in Jenner's Los Angeles office. The hourly rates for the attorneys who worked on this case ranged from $705 to $1,095 per hour, which represented a significant discount from their standard rates. *See id.* ¶¶ 34, 37. The hourly rate for the two Jenner paralegals who worked on this case was $390. *Id.* ¶ 34.

These rates reflect the experience, reputation, and skill of the Jenner attorneys and paralegals who worked on this case. The attorneys who represented Evolution in this action are accomplished and experienced litigators with particular experience in intellectual property. *See* Thomas Decl. ¶¶ 22–32. Evolution's lead attorney, Jenner partner Andrew J. Thomas, has practiced law for more than three decades and has been repeatedly recognized as a top intellectual property and media lawyer by *Chambers USA*, *Best Lawyers in America*, *Variety*, and the *Daily Journal*, as further described in the accompanying declaration. Jenner partner Andrew H. Bart, who served as Evolution's lead attorney until his retirement in December 2024, was one of the country's leading media and entertainment lawyers, as recognized by *Chambers USA*, *Billboard*, *Variety*, and the *Hollywood Reporter*, among others. Jenner Partner Steve Englund provided consultation and analysis regarding royalty questions and Evolution's relevant agreements with Mr. Lazar and Bravo. Mr. Englund has more than thirty years of experience and has been recognized as a top intellectual property and copyright lawyer by *Chambers USA*, *Best Lawyers in America*, and *Legal 500*, as further described in the accompanying declaration.

These three renowned intellectual property attorneys were assisted by experienced special counsel, associates, and paralegals. Special Counsel Andrew G. Sullivan has practiced law for eleven years, has significant experience in copyright and trademark litigation, and has twice been named one of *Best Lawyers* "Ones to Watch in America." Associate Sarah S. Lee is a former Assistant United States Attorney who has practiced law for nine years and has served as lead counsel in multiple jury and bench trials. Associate Eric W. Wolff has practiced law for four years and has significant litigation experience in media and entertainment cases involving copyright and antitrust issues. Associate Peter C. Welch has practiced law for two years and has experience in complex litigation in both state and federal court on intellectual property and other matters. Paralegal Alonso Ponce has over a decade of experience, including extensive trial experience, and has been a licensed attorney since 2013. Paralegal Evan Harrington has more than 20 years of experience in the legal industry, assisting in all aspects from case start-up to trial, and has been a certified paralegal since 2009.

These attorneys' and paralegals' hourly rates are reasonable and consistent with the prevailing market rates in Los Angeles. Courts in this district have approved rates well in excess of the rates of Evolution's counsel in this matter, which ranged from $705 to $1,095, and their paralegals' hourly rate of $390. *See OWLink Technology, Inc. v. Cypress Technology Co., Ltd.*, 2023 WL 9061081 (C.D. Cal. Dec. 12, 2023) (finding rates of $1200 for partners and $900 for associates were reasonable); *Netlist Inc. v. Samsung Electronics Co., Ltd.*, 341 F.R.D. 650 (C.D. Cal. June 13, 2022) (finding rates ranging from $1,160 to $1,370 for partners and $845 to $1,060 for associates were reasonable); *see also Williams v. Berryhill*, 2018 WL 6333695, at *2 (C.D. Cal. Nov. 13, 2018) (approving an attorney's hourly rate of $1,553).

**B.      The Number of Hours Expended Was Reasonable.**

The number of hours expended by Evolution's counsel is also reasonable. All of the work reflected in the time records was necessary and justified to prevail in this action. Mr. Lazar's lawsuit, though unreasonable, nevertheless required significant efforts to defend. Although Evolution engaged Mr. Lazar in extensive settlement negotiations including a mediation, it nevertheless was required to litigate the case through document and deposition discovery, summary judgment briefing, and pretrial preparations up until eleven days before trial. As detailed above in Section II, Evolution's counsel propounded and responded to requests for production requiring the review of thousands of documents, conducted and defended multiple depositions, opposed plaintiff's motion to compel, briefed its summary judgment motion, and engaged in significant trial preparation.

In total, Evolution seeks $1,401,782.10 in attorney's fees for its defense in this action for Jenner's services from February 15, 2024 (the approximate time Jenner was engaged after Mr. Lazar's counsel sent its January 29, 2024 demand letter threatening litigation) to October 3, 2025 (the date the Court granted summary judgment). Thomas Decl. ¶¶ 2, 34.

Evolution's counsel carefully reviewed the invoices to ensure that all the fees it is seeking were necessary to its defense of this action and appropriate for plaintiff to bear. *Id.* ¶ 3. In doing so, counsel identified $79,638.40 in legal fees incurred between February 15, 2024 and October 3, 2025, for which it is *not* seeking recovery in an exercise of billing judgment. *Id.* These fees, though paid in full by Evolution, have been deducted from the fee motion request. This amount includes counsel's services related to sealing Evolution's confidential documents and related testimony, conferring with counsel for non-party Bravo regarding the sealing of Bravo's documents, and conferring with Mr. Lazar's counsel regarding the numerous times that his counsel failed to properly file confidential documents under seal, all of which totaled more than $38,575. *Id.* ¶¶ 3, 14.

In addition, Evolution is not seeking to recover over $168,000 that has been incurred since October 3, 2025, which includes significant work to prepare a second Rule 30(b)(6) designee witness in response to this Court's January 21, 2026 order, this motion for attorney's fees, and a memorandum of costs. *Id.* ¶¶ 4, 12.

The $1,401,782.10 in total fees that Evolution seeks in this case is reasonable and consistent with fee awards in cases in this district that were litigated through summary judgment and/or close to trial. *See, e.g.*, *OWLink Tech., Inc.*, 2023 WL 9061081, at *5 (approving fee award of $2,293,460.50 in a case that proceeded to trial); *Perfect 10, Inc. v. Giganews, Inc.*, 2015 WL 1746484, at *2 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (awarding $5,213,117 in complex action resolved at summary judgment); *N.T.A.A. v. Nordstrom, Inc.*, 2024 WL 1723524, at *4–5 (C.D. Cal. Apr. 19, 2024) (awarding $1,275,453 in case that did not reach trial).

## V.    CONCLUSION

For the foregoing reasons, this Court should grant this motion and award Evolution its attorney's fees incurred and paid in defending against Mr. Lazar's claims.

Dated: May 4, 2026                    JENNER & BLOCK LLP

                                      By: */s/ Andrew J. Thomas*
                                          Andrew J. Thomas
                                          Sarah S. Lee
                                          Eric W. Wolff

                                          Attorneys for Defendant
                                          EFT Media Productions LLC d/b/a
                                          Evolution Media

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant EFT Media Productions LLC d/b/a Evolution Media, certifies that this brief contains 5,937 words, which complies with the word limit of L.R. 11-6.1, and the page limit set by the Court's New Case Order dated November 19, 2024.

Dated: May 4, 2026

/s/ *Andrew J. Thomas*
Andrew J. Thomas