**DAVID B. JONELIS (SBN 265235)**
djonelis@singerlaw.com
**KELSEY J. LEEKER (SBN 313437)**
kleeker@singerlaw.com
**SINGER WEINSTEN WOLF & JONELIS LLP**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Tel:   (310) 556-3501
Fax:   (310) 556-3615

Attorneys for Plaintiff
ALAN LAZAR

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN LAZAR, an individual,<br><br>                Plaintiff,<br><br>        v.<br><br>AMAZON STUDIOS LLC, a corporation; EFT MEDIA PRODUCTIONS LLC d/b/a EVOLUTION MEDIA, a limited liability company; and DOES 1-10,<br><br>                Defendants. | CASE NO.: 2:24-cv-09748-SVW-KS<br><br>[Hon. Stephen V. Wilson<br>Magistrate Hon. Karen L. Stevenson]<br><br>**PLAINTIFF ALAN LAZAR'S OPPOSITION TO EFT MEDIA PRODUCTIONS LLC'S MOTION FOR ATTORNEY'S FEES**<br><br>Date:          June 8, 2026<br>Time:          1:30 p.m.<br>Courtroom:  10A, 10th Floor |

7540-2

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................5

II.     THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY EVOLUTION'S MOTION FOR FEES .........................................................6

     A.      Lazar's Claims In This Case Were Not Objectively Unreasonable ....7

     B.      Awarding Evolution Its Fees In This Instance Would Go Against the Copyright Act's Essential Goals.......................................................10

     C.      Each of the *Fogerty* Factors Favors Lazar........................................11

     D.      The Amount of Fees Requested by Evolution Is Objectively Unreasonable..................................................................................12

     E.      The Court Has Discretion to Deny Fees Entirely Based Solely on Evolution's Inflated Request.............................................................15

III.    CONCLUSION ................................................................................16

PLAINTIFF ALAN LAZAR'S OPPOSITION TO
EFT MEDIA PRODUCTIONS LLC'S MOTION FOR ATTORNEY'S FEES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Gen. Life & Acc. Ins. Co. v. Wu*,
  2010 WL 117721 (C.D. Cal. Jan. 4, 2010).........................................................15

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986).........................................................................13

*Fantasy v. Fogerty*,
  94 F.3d 553 (9th Cir.1996).....................................................................6, 7, 11

*Farris v. Cox*,
  508 F.Supp. 222 (N.D. Cal. 1981)...................................................................15

*Fogerty v. Fantasy, Inc.*,
  510 U.S. 517 (1994) ..........................................................................................7

*Hensley v. Eckerhard*,
  461 U.S. 424 (1983) ...................................................................................12, 13

*Houston v. Inland Marine Industries*,
  1982 WL 459 (N.D. Cal. June 25, 1982) .........................................................15

*Intel Corp. v. Terabyte Int'l, Inc.*,
  6 F.3d 614 (9th Cir. 1993)................................................................................13

*Kirtsaeng v. John Wiley & Sons, Inc.*,
  579 U.S. 197 (2016) ..........................................................................................7

*Lewis v. Kendrick*,
  944 F.2d 949 (1st Cir. 1991) ............................................................................16

*Mahon v. Mainsail, LLC*,
  2024 WL 5425616 (N.D. Cal. Dec. 19, 2024) ...................................7, 9, 10, 12

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
  2009 WL 10669361 (C.D. Cal. Mar. 25, 2009) ...............................................15

*Shame on You Prods. v. Banks*,
  893 F.3d 661 (9th Cir. 2018)..............................................................................7

3

*Twentieth Century Music Corp. v. Aiken,*
422 U.S. 151 (1975) ..............................................................................................6

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*
676 F.2d 1291 (9th Cir. 1982)...........................................................................12

*Yahoo!, Inc. v. Net Games, Inc.,*
329 F.Supp.2d (N.D. Cal. 2004)...................................................................12, 13

**Statutes**

17 U.S.C. § 505.....................................................................................................6

PLAINTIFF ALAN LAZAR'S OPPOSITION TO
EFT MEDIA PRODUCTIONS LLC'S MOTION FOR ATTORNEY'S FEES

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Through its Motion for Attorney Fees, Defendant EFT MEDIA PRODUCTIONS LLC ("Evolution") has improperly attempted to recast this action as one in which Plaintiff ALAN LAZAR ("Lazar") somehow asserted objectively unreasonable and frivolous claims. Not so. As the Court's own summary judgment order reflects, while Evolution may have ultimately prevailed, Lazar's claims were not far-fetched or in bad faith. Rather, given that the Court found a triable issue as to the ownership of the subject theme song (thus rejecting Evolution's primary argument on summary judgment), as well as to the issue of whether Evolution concealed from Lazar the material terms of its agreement with Bravo, Lazar had good reason to file this suit. Indeed, but for the filing of this suit, Lazar would never have obtained a copy of the Bravo agreement in the first place.

As set forth herein, the discretionary factors governing fee requests under the Copyright Act weigh substantially in favor of denying Evolution's motion. In particular:

- Lazar's claims were not objectively unreasonable or frivolous;
- it would be unfair to compensate a wealthy, Amazon-backed corporate entity (the proverbial Goliath to Lazar's David) at the expense of an individual creator like Lazar;
- there is no evidence of any improper motivation by Lazar; and
- a fees award would not serve any proper deterrent purpose, but would actually (and improperly) deter creators from pursuing good faith claims against studios and corporations.

Moreover, granting Evolution's motion would run counter to the Copyright Act's ultimate aim in stimulating artistic creativity for the public good. Indeed, awarding nearly 1.5 million dollars in fees to a studio like Evolution – which admittedly failed to enter into a written agreement with Lazar concerning the

5

subject theme song, and which concealed the terms of its underlying agreement with Bravo to Lazar's detriment – would do absolutely nothing to stimulate creatively or serve the public interest.

Furthermore, even looking past Evolution's non-entitlement to fees in the first place, the amount of fees that it has requested – based on a purported 1,655.3 hours of time billed in a case that, for all intents and purposes, transpired over less than four months – is objectively unreasonable.  Indeed, not only is the amount itself wildly inflated (including in comparison to the amount of fees incurred by Lazar, which was two-thirds less than the fees requested by Evolution), but it includes time spent by Evolution's attorneys in connection with Evolution's own discovery misconduct (which misconduct ultimately necessitated Lazar's filing of a successful motion to compel).  As such, the Court would be well within precedent to deny Evolution's motion based solely on its inflated request.

Accordingly, for the reasons stated herein, Lazar respectfully requests that the Court deny Evolution's motion.

## II. <u>THE COURT SHOULD EXERCISE ITS DISCRETION TO DENY EVOLUTION'S MOTION FOR FEES</u>

Whether or not a prevailing party is entitled to attorneys' fees under the Copyright Act "is reposed in the sound discretion of the district courts." *Fantasy v. Fogerty*, 94 F.3d 553, 555 (9th Cir.1996) ("*Fogerty II*"); *see also* 17 U.S.C. § 505. In exercising said discretion, the most important consideration is whether an award will further the purposes of the Copyright Act. *Fogerty II*, 94 F.3d at 558 ("Faithfulness to the purposes of the Copyright Act is, therefore, the pivotal criterion"). And to this point, the Copyright Act's "ultimate aim is ... to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975).

A district court may consider the following non-exclusive factors (sometimes referred to as the "*Fogerty* factors") when determining if an award of attorneys' fees

6

is warranted: "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994).  Moreover, "substantial weight" must be given to the "objective unreasonableness" factor "because it both encourages parties with strong legal positions to stand on their rights and deters those with weak ones from proceeding with litigation." *Kirtsaeng v. John Wiley & Sons, Inc.*, 579 U.S. 197, 205 (2016); *see also Shame on You Prods. v. Banks*, 893 F.3d 661, 666 (9th Cir. 2018).

Notably, a "legal argument that loses is not necessarily unreasonable." *Mahon v. Mainsail, LLC*, 2024 WL 5425616, at *2 (N.D. Cal. Dec. 19, 2024) (internal quotation omitted) (citing *Shame on You Prods., supra,* 893 F.3d at 666). For example, a "[m]ere loss on summary judgment, and particularly in a case that was 'close and difficult,' does not make the case objectively unreasonable." *Id.* (citing to *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1181 (9th Cir. 2013) (holding there was "no reason to believe" that the plaintiff, in bringing a copyright infringement suit, "should have known from the outset that [his] chances of success in this case were slim to none.")).

### A.    Lazar's Claims In This Case Were Not Objectively Unreasonable

Here, as demonstrated by the Court's summary judgment order, Lazar's claims were <u>not</u> objectively unreasonable.

First and foremost, with respect to Lazar's copyright claim, the Court found that there was a triable issue of fact on Evolution's <u>primary defense</u> to infringement – *i.e.*, that the subject theme song was a work-made-for-hire.  The Court explained:

> [T]here [was] sufficient evidence to permit a reasonable jury to determine that Lazar and Evolution did not intend the Agreement to apply to the Theme. Therefore, on summary judgment, where the Court must resolve all reasonable inferences in favor of the non-moving party, the Court cannot find as a matter of law that Lazar expressly designated

7

the Theme as a work-made-for-hire in the provision of the Agreement cited by Evolution.

[Dkt. 127 at p. 7].

To take it even further, the Court specifically rejected Evolution's argument that the "Certificate of Authorship" attached to the parties' agreement had rendered the title theme as a work-made-for-hire, and also rejected Evolution's contention that the agreement had expressly assigned Evolution any rights to the theme. [*Id*. at p. 8].

Simply put, this was not a situation where a copyright defendant disproved all of the plaintiff's contentions; rather, Lazar's primary contention – that he owned the title theme – was found to be potentially viable.  Hence, there is no indication that Lazar's copyright claim was objectively unreasonable or that the claim was brought frivolously.[1]

Likewise, the Court cannot find that Lazar's breach of contract claim was objectively unreasonable – given that Lazar had no way of knowing why he had not received mechanical royalties absent the filing of this lawsuit.  Specifically, it is undisputed that Evolution did not provide Lazar with a complete copy of its agreement with Bravo – which revealed, for the first time, that no mechanical royalties could have been collected and/or payable to Lazar in the first place – until after Lazar filed this lawsuit.  As Lazar attested in connection with the summary judgment proceedings:

---

[1] Indeed, because Evolution was not found to be the undisputed owner of the title theme (as it claimed that it was), the Court's decision arguably favored Lazar on that issue.  In particular, even if Evolution has an implied license to use the theme song, that does not give it ownership over the song outright.  Rather, if Lazar is the owner of the copyright (which is an issue left open by the Court's summary judgment order), then he still has a right to 100% of the royalties arising from the exploitation of the theme.

8

> Through discovery in this case, I was able to obtain a copy of the 2009 production services agreement between Bravo and Evolution (the "PSA") that predated my 2010 Music Cues Agreement with Evolution. ***Prior to the filing of this action, I was not aware of the terms of the 2009 PSA, nor did Evolution ever disclose to me that, based on the PSA, it had given up any right to collect mechanical royalties for the Music Cues that I would compose for RHOBH prior to the execution of the 2010 Music Cues Agreement.***

[Dkt. 37-2 at ¶12 (emphasis added)].  Thus, as was the case in *Mahon*, *supra*, "the discovery process...served its purpose" in this case, revealing a critical truth about the nonpayment of mechanical royalties that Lazar could not have discovered without having filed a lawsuit. *Mahon*, 2024 WL 5425616, at *2.

It further bears noting that the Court specifically found there were triable issues as to whether Evolution <u>deceptively</u> misled Lazar into believing that he would be paid mechanical royalties under his music cues agreement (which was a material inducement for Lazar's entry into thatp agreement). [*See* Dkt. 127 *at* p. 16 (there is "at least a dispute of fact as to whether (1) Evolution entered into the Agreement with Lazar, knowing that the receipt of mechanical royalties was a material term to Lazar, (2) Evolution knew during negotiation of the Agreement that the PSA between Evolution and Bravo would preclude receipt of mechanical royalties by Lazar, and (3) Evolution nonetheless drafted the Agreement to allow Lazar to expect that mechanical royalties might be forthcoming")].  Indeed, the Court went so far as to infer that these facts might have given rise to a claim for <u>material misrepresentation</u> against Evolution, had Lazar chosen to assert such a claim.  [Dkt. 127 at p. 17 ("Unlike the *McClain* plaintiffs, Lazar has brought no claim for material misrepresentation. Lazar does not argue that the Agreement is void *ab initio* or fraudulently induced but rather valid and breached").  Thus, while the Court may have ultimately rejected Lazar's implied contract claim, it nonetheless recognized that Evolution's own bad faith conduct may have given rise to that claim in the first place.

9

**B.**     **Awarding Evolution Its Fees In This Instance Would Go Against the Copyright Act's Essential Goals**

Awarding Evolution its requested fees in this instance would directly contradict the stated goals of the Copyright Act. Specifically, "[a]uthors of creative works *must* be able to bring such suits if copyright law is to encourage and reward authors through exclusive rights in their works, and ultimately promote the general public's 'access to creative works.'" *Mahon*, 2024 WL 5425616, at *4 (emphasis added) (citing *Fogerty*, 510 U.S. at 527).

Contrary to Evolution's argument in its Motion that "Lazar sought to use his copyright claim to remove the Theme from the airwaves and from an audience of millions across the United States and around the world," that was not the goal of bringing this action. [Dkt. 141 at p. 12]. Rather, Lazar filed this case in order to seek fair compensation for his musical creations – given that he, as an individual copyright author and creator, had good reason to believe that he was being exploited by a large, successful company. Indeed, as Evolution's own executive – Paul Trombetta – admitted, there was no written agreement governing the title theme. [*See, e.g.,* Dkt. 37-2 at ¶ 13 ("I received a call from Paul Trombetta in late 2023, asking me if I had a copy of any agreement between myself and Evolution pertaining to the Title Theme.")]. Thus, Lazar's motivation in filing this case was simply to be fairly compensated for his copyrighted work and to enforce his rights as a creator – which is consistent with the purpose of the Copyright Act.[2]

---

[2] Further, despite Evolution's assertion that Lazar somehow filed this case to hold the production "hostage" [Dkt. 141 at p. 12], Lazar did no such thing. Rather, as Evolution's own declarant admitted in connection with the summary judgment proceedings, the subject television program – *The Real Housewives of Beverly Hills* – has continued to air, unfettered, throughout the pendency of this case. [Dkt. 29-3 at ¶6].

### C.    **Each of the *Fogerty* Factors Favors Lazar**

Here, each of the non-exclusive *Fogerty* factors weighs in favor of denying Evolution's Motion. First, as discussed above, Evolution's favorable ruling on summary judgment does not equate to a showing that Lazar's claims were objectively unreasonable – given that the Court found a triable issue on Evolution's core copyright defense and further found that Evolution may have acted deceptively in connection with the subject contract.

Second, as to considerations of compensation, Evolution is owned by Amazon and thus presumably has access to unlimited funds to litigate its many copyright disputes.  Lazar, on the other hand, is an individual with no corporate backing or the purse of Amazon behind him.  Thus, fairness dictates that fee shifting from Evolution, a major studio backed by Amazon, to an individual attempting to enforce his rights as a creative, not occur.  Indeed, forcing Lazar to pay Evolution's fees would actually go <u>against</u> the essential goals of the Copyright Act by deterring creatives from enforcing their rights when the opponent is a major corporation. Such a ruling would have an undeniable chilling effect on actions to enforce copyrights by individual creators.

Third, as to frivolousness and motivation, the Court's decision on Evolution's motion for summary judgment establishes that Lazar's claims were not frivolous; indeed, the Court found a triable issue as to copyright ownership, and Evolution has presented no evidence whatsoever of any improper motivation on behalf of Lazar for bringing his claims (nor can it). Lazar's only motivation in bringing this action was to address his grievances regarding his statutory and contractual rights in the subject musical works, nothing else – spurred on by Evolution's own admission that no written agreement existed for the theme.  There is no other benefit that Lazar could possibly get from bringing this action.

Finally, as to general deterrence, an award of fees to Evolution would merely serve to deter <u>creators</u> from making reasonable, non-frivolous claims to enforce

their copyright interests where the entity on the other side is well-funded. This directly contradicts the goals of the Copyright Act, which are to "encourage and reward authors through exclusive rights in their works," which ultimately promotes 'the general public's "access to creative works.'" *Mahon*, 2024 WL 5425616, at *4. Moreover, given that this case is the first and only copyright action ever filed by Lazar, and given that his claims were not objectively unreasonable or frivolous, this is not a situation where a fees award would deter a plaintiff from filing additional frivolous claims. Lazar's only copyright claim was the claim that he brought herein, and thus there is no need to deter him from making any other claims.

In sum, Lazar's claims against Evolution were objectively reasonable, which is the most important factor for the Court to consider when ruling on Evolution's fee Motion. In addition, the other non-exclusive factors weigh heavily in favor of denying the motion, where an award of fees would operate to significantly deter valid copyright owners from enforcing their rights against well-funded potential infringers.

**D.    The Amount of Fees Requested by Evolution Is Objectively Unreasonable**

Even where (unlike here) an award of attorneys' fees is warranted, a court must still proceed to calculate the fee award and a party may only recover a *reasonable* amount of fees. *Hensley v. Eckerhard,* 461 U.S. 424, 433 (1983); *see Twin City Sportservice, Inc. v. Charles O. Finley & Co.,* 676 F.2d 1291, 1312-13 (9th Cir. 1982). A reasonable attorney fee is the number of hours and the hourly rate that would be billed by "reasonably competent counsel." *Yahoo!, Inc. v. Net Games, Inc.,* 329 F.Supp.2d (N.D. Cal. 2004) citing *Venegas v. Mitchell,* 495 U.S. 82, 86 (1990). Reasonably competent counsel do not bill hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhard,* 461 U.S. 424, 434 (1983). Accordingly, "courts award the fee that would be charged by reasonably

12

competent counsel, *not* the fee due under the particular agreement between the fee applicant and its attorneys." *Id.*

In determining a reasonable number of hours, courts focus on the requested number of hours as a whole rather than the requested hourly rates of individual attorneys. *Yahoo!, Inc. v. Net Games, supra,* 329 F.Supp.2d at 1187. Focusing on the hours as a whole allows the court to make better attorney fee decisions since the court has seen the nature of the factual and legal questions in the case. *Id.*

Counsel bears the burden of establishing that the number of hours expended is reasonable by submitting detailed time records justifying the hours claimed to have been expended. *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986). The party requesting fees first must prove the hourly rate and number of hours that go into the lodestar calculation are reasonable themselves. *Intel Corp. v. Terabyte Int'l, Inc.,* 6 F.3d 614, 622 (9th Cir. 1993). The amount may be reduced if the hours are duplicative, excessive, or otherwise unnecessary. *Id.; Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

Here, by any objective assessment, the $1.4 million fee award requested by Evolution is ***patently unreasonable***.  Indeed, the unreasonable nature of Evolution's request is self-evident from the sheer amount of time that Evolution claims was incurred in connection with this case: <u>1,655.3 hours</u>!

As the Court is aware, the bulk of the relevant work in this case necessarily took place over an <u>85 business day period</u> between <u>June 2, 2025</u> (the date of the Initial Status Conference [Dkt. 22]) and <u>October 3, 2025</u> (the date when the Court granted Evolution's summary judgment motion and vacated the trial [Dkt. 119]).[3] Thus, even assuming that at least one of Evolution's seven attorneys worked

---

[3] The parties' respective discovery efforts and motion practice took place entirely during this 85 business day period.  Prior to the Initial Status Conference, Evolution filed only its answer to the complaint and the corresponding disclosure statement. [Dkt. 20, 21].

13

nonstop from 9am to 5pm on each and every single one of those days, the total time incurred would still only be 680 hours (*i.e.*, 8 hours per day x 85 days). Yet Evolution outrageously claims to have incurred almost three times that amount of time in connection with this case.[4] Such a claim is unreasonable by any account.

To further illustrate the unreasonable amount of fees requested by Evolution, Lazar's counsel, who billed at hourly rates only slightly less than Evolution's counsel ($850 for partner David Jonelis and $650 for associate Kelsey Leeker) incurred approximately $530,000 in fees over the entirety of this case. Jonelis Decl., ¶2. This is almost two-thirds less than the fees requested by Evolution, even though Lazar was the party with the burden of proof. By comparison, Evolution's requested fees are objectively unreasonable.

Finally, and as an even further illustration of Evolution's unreasonable overreach in its request for fees, Evolution has sought to recover the fees incurred in connection with its own Court-recognized discovery misconduct. Specifically, as the Court may recall, Evolution failed to properly prepare its 30(b)(6) corporate designee (Alex Baskin) on the critically essential issue of the money received by Evolution under its subject agreement with Bravo. [*See, e.g.,* Dkt. 113 (granting Lazar's motion to compel and noting that "it is clear from the transcript that [Evolution's corporate designee] *did little, if any, preparation* for the designee deposition and virtually nothing to obtain any information about Evolution's financial performance under the PSA")]. As a result, Lazar was forced by Evolution

---

[4] It also bears noting that Evolution has sought to recover fees for 223.3 hours of time purportedly incurred by an associate – Peter Welch – whom Lazar's counsel was not even aware existed until his name showed up in Evolution's fee motion. With no disrespect to Mr. Welch, he did not participate in a single hearing or deposition in this case, he was not included in even a single email sent to Lazar's counsel, and he was never mentioned even once by Evolution's counsel during discussions with Lazar's counsel. Jonelis Decl., ¶3.

14

to incur substantial time and expense (including deposition costs) on an insufficient initial 30(b)(6) deposition; and was then forced to incur <u>further</u> time and expense (1) successfully compelling a second 30(b)(6) deposition, and (2) taking the second deposition.  Yet, despite being the sole cause of this material waste of time and expense, Evolution has now sought to recover its own substantial legal fees incurred in connection with the initial insufficient deposition and the subsequent motion to compel practice that it necessitated. [*See, e.g.,* Dkt. 141-2 at pp. 102-108 (seeking fees incurred in connection with preparing for and defending the initial insufficient deposition of Alex Baskin); pp. 112, 113, 115, 119, 120, 134, 135, 136, 137, 139 (seeking fees incurred in connection with Lazar's motion to compel)]. Such a tactic further underscores the unreasonable nature of Evolution's request for fees.

### E.    The Court Has Discretion to Deny Fees Entirely Based Solely on Evolution's Inflated Request

"Where, as in this case, an attorney submits a compilation of hours and costs to the Court which the trier of fact finds is unreasonable, not credible, excessive or unreasonably inflated, the Court has discretion to conclude that the attorney is not entitled to any recovery." *Am. Gen. Life & Acc. Ins. Co. v. Wu*, 2010 WL 117721, at *2 (C.D. Cal. Jan. 4, 2010) (denying recovery of any fees based on excessive request); *see Farris v. Cox*, 508 F.Supp. 222, 227 (N.D. Cal. 1981) ("fees may be denied in their entirety when petitioning lawyers are guilty of overreaching in seeking outrageously unreasonable fees); *see Houston v. Inland Marine Industries*, 1982 WL 459, *2 (N.D. Cal. June 25, 1982) ("If the petitioning lawyer is guilty of overreaching in seeking outrageously unreasonable fees, the Court, in its discretion, may deny all fees," citing *Brown*, 612 F.2d at 1059)

The "reason for acting punitively when a party asks for fees that are outrageously excessive is to deter attorneys from making unreasonable demands, knowing that the only unfavorable consequence of such misconduct would be reduction of their fee to what they should have asked for in the first place." *Milton*

15

*H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, 2009 WL 10669361, at *21 (C.D. Cal. Mar. 25, 2009) (citing to *Brown v. Stackler,* 612 F. 2d 1057, 1059) (7th Cir. 1980); *see also Lewis v. Kendrick,* 944 F.2d 949, 958 (1st Cir. 1991) ("A request for attorney's fees is required to be in good faith and in reasonable compliance with judicial pronouncements, and not an opening gambit in negotiations to reach an ultimate result").

Here, as described above, Evolution is excessively and unreasonably seeking fees for 1,655.3 hours of time purportedly spent in a case that, for all intents and purposes, took place predominantly over an 85 business day period. Not to mention that a substantial amount of Evolution's attorney time could have been avoided had Evolution not engaged in discovery misconduct. Consequently, based solely on the excessive nature of Evolution's request, this Court has discretion to deny the request outright.

## III.     **CONCLUSION**

For the foregoing reasons as stated herein, Lazar respectfully requests that the Court deny Evolution's motion in its entirety.

Dated:  May 18, 2026                           SINGER WEINSTEN
                                                           WOLF & JONELIS LLP
                                                           DAVID B. JONELIS
                                                           KELSEY J. LEEKER

                                                    By:  */s/  David B. Jonelis*
                                                           DAVID B. JONELIS
                                                           Attorneys for Plaintiff Alan Lazar